AMERICAN PARTS CO., INC., v. AMERICAN
ARBITRATION ASSOCIATION.

1. Contracts—Uniform Commercial Code—Sales—Confirmation
—Statute of Frauds—Burden of Proof.

   Provision of uniform commercial code, relating to the sale of
   goods for a price of $500 or more, that a written confirmation
   of a prior oral contract, received by a merchant within a
   reasonable time after the oral contract, is sufficient to meet
   the writing requirements of the statute unless the merchant
   objects to the contents of the confirmation within 10 days after
   it is received, only takes away from the party who fails to
   object the defense of the statute of frauds, and does not
   affect the burden of the other party to persuade the trier
   of fact that a contract was in fact made orally prior to
   written confirmation (PA 1962, No 174, § 2201).

2. Same—Uniform Commercial Code—Oral Contracts—Confirma-
tion—Additional Terms—Alteration.

   An acceptance or written confirmation of an oral contract for
   the sale of goods operates as an acceptance, under the
   uniform commercial code, even if the acceptance or confirmation
   states terms additional to or different from those previously
   offered or agreed upon, but the additional or different terms
   do not become a part of the contract unless agreed to by the
   other contracting party, except that between merchants, addi-
   tional, but not different, terms become part of the contract
   if they do not materially alter the agreement and the other
   contracting party does not object within a reasonable
   time (PA 1962, No 174, § 2207).

---

References for Points in Headnotes

[1] 49 Am Jur, Statute of Frauds § 236 et seq.
[2–4, 10–19] 17 Am Jur 2d, Contracts § 62 et seq.
[5, 7–9] 41 Am Jur, Pleadings § 335 et seq.
[6] 29 Am Jur 2d, Evidence § 662 et seq.
[20] 5 Am Jur 2d, Appeal and Error § 1011.

3. SAME—UNIFORM COMMERCIAL CODE—SALES—ORAL CONTRACTS—CONFIRMATION—ADDITIONAL TERMS.

> The purpose of the uniform commercial code provision relating to acceptance of an oral contract, or the failure to object to a written confirmation, is to validate understandings between parties even though the writings between them do not mesh with the precision traditionally required by common-law rules of offer and acceptance (PA 1962, No 174, § 2207).

4. SAME—UNIFORM COMMERCIAL CODE—SALES—ORAL CONTRACTS—CONFIRMATION—ADDITIONAL TERMS.

> The policy of the provisions of the uniform commercial code relating to a written acceptance or confirmation of a prior oral contract, which states terms additional to or different from those offered or agreed upon, is that the parties should be able to enforce their agreement, whatever it is, despite discrepancies between the oral agreement and the written confirmation or between an offer and acceptance, if enforcement can be granted without requiring either party to be bound to a material term to which it has not agreed (PA 1962, No 174, § 2207).

5. JUDGMENT—MOTION FOR SUMMARY JUDGMENT—QUESTION OF FACT.

> A question of fact that is presented by the pleadings may not be resolved on the basis of conflicting affidavits in support of, and opposition to, a motion for summary judgment (GCR 1963, 117.2[3]).

6. CONTRACTS—SALES—EVIDENCE—ADMISSION.

> Letter from subordinate employee of purchaser to seller referring to "the recent revision of our contract with your company" *held,* an admission, but not such as to preclude the purchaser from proving that no contract did, in fact, exist.

7. JUDGMENT—SUMMARY JUDGMENT—QUESTIONS OF FACT.

> Disputed questions of fact may not be resolved on a motion for summary judgment, and in deciding the motion, all inferences must be viewed in light most favorable to the party opposing the motion (GCR 1963, 117.2[3]).

8. SAME—SUMMARY JUDGMENT—CREDIBILITY.

> The credibility of witnesses may not be decided in connection with a motion for summary judgment (GCR 1963, 117.2[3]).

9. SAME—SUMMARY JUDGMENT—ISSUES OF FACT.

> A trial judge may not, in considering a motion for summary judgment, anticipate his role as trier of fact (GCR 1963, 117.2[3]).

10. Contracts—Uniform Commercial Code—Sales—Confirmation
    —Additional Terms.

A written confirmation of a prior oral contract for the sale of
goods of a value exceeding $500 which contains a term addi-
tional to that agreed upon does not become part of the sales
contract unless agreed upon by the other party or both parties
are merchants and the additional term is immaterial (PA 1962,
No 174, §§ 2201, 2207).

11. Same—Additional Term—Arbitration.

Arbitration clause would not be an *additional term* if the parties
had agreed that their prior oral understanding would be
confirmed on the seller's standard form of confirmation which
contains such arbitration clause (PA 1962, No 174, §§ 2201,
2207).

12. Same—Materiality of Arbitration Clause—Question of Fact.

The materiality of an arbitration clause in a confirmation of a
prior oral agreement and whether parties are merchants
within the meaning of the uniform commercial code may well
depend on facts beyond the documents and affidavits submitted
in connection with a hearing on motion for summary judg-
ment, hence, may not be determinable on the hearing (PA 1962,
No 174, §§ 2201, 2207).

13. Same—Additional Term—Evidence.

Neither a reference, in seller's invoices accompanying various
deliveries of goods, to seller's confirmation of sale nor the
purchaser's acceptance and payment for large quantities of the
goods, including an item under dispute, may be regarded as
acts manifesting the purchaser's assent to an additional term
(PA 1962, No 174, §§ 2201, 2207).

14. Same—Uniform Commercial Code—Sales—Oral Contract—
    Additional Terms.

Material additional terms contained in a party's written confirma-
tion of an oral agreement do not become part of the contract
unless expressly agreed to by the other party under the uni-
form commercial code (PA 1962, No 174, §§ 2201, 2207).

15. Same—Uniform Commercial Code—Sales—Oral Agreement—
    Written Confirmation—Additional Terms.

The fact that following an oral agreement one or both of the
parties resorts to the battle of forms does not, under the

uniform commercial code, change the oral agreement or prevent the formation of the contract as agreed, or place one party or another in the position of waiving the benefit of the agreement or becoming bound to unagreed small or large print by proceeding with performance of those terms upon which the party, in fact, did orally agree (PA 1962, No 174, §§ 2201, 2207).

16. SAME—UNIFORM COMMERCIAL CODE—SALES—ORAL CONTRACT—WRITTEN CONFIRMATION—ADDITIONAL TERMS.

A party may, by statute, provide that acceptance of an agreement is made conditional on assent to terms additional or different from those initially agreed upon, but there is no provision that a "written confirmation" of an oral agreement may contain such additional or different provisions (PA 1962, No 174, §§ 2201, 2207).

17. SAME—UNIFORM COMMERCIAL CODE—SALES—ORAL CONTRACT—WRITTEN CONFIRMATION—ADDITIONAL TERMS.

A party who has entered into an oral agreement cannot change that agreement by the simple expedient of sending a written confirmation containing additional or different terms including an additional "conditional assent" term providing that the other contracting party, by performing the previousy agreed-upon terms, agrees to all the unagreed-upon additional or different terms (PA 1962, No 174, §§ 2201, 2207).

18: SAME—UNIFORM COMMERCIAL CODE—SALES—ORAL AGREEMENT—WRITTEN CONFIRMATION—ADDITIONAL TERMS.

Inclusion of additional assent language in written confirmation of oral agreement is of no force and effect whatsoever unless, like all other material terms, it is expressly agreed to by the other party (PA 1962, No 174, §§ 2201, 2207).

19. SAME—SUMMARY JUDGMENT—SALES—ORAL AGREEMENT—WRITTEN CONFIRMATION—ADDITIONAL TERMS.

Summary judgment for defendant-seller in action by plaintiff-purchaser for a stay of arbitration proceeding provided for in a "confirmation of order" sent by seller to purchaser in confirmation of prior oral agreement, *held*, error, where affidavits from the parties established (1) that an oral agreement was reached, but the parties were in dispute as to the terms (2) purchaser claimed that the oral agreement contemplated a subsequent written contract to be executed by both parties,

(3) seller's "confirmation of order" containing an arbitration clause was forwarded to purchaser shortly after the oral agreement, with purchaser making no objection within 10 days, but subsequently objecting to the price of one of the items contained in the "confirmation of order", and (4) purchaser subsequently accepted goods shipped by seller, paying for all items at the prices set in the "confirmation of order", but claimed that each shipment was a separate transaction, since the issues involved could not properly be determined without an evidentiary hearing and findings of fact with respect to whether (1) a firm oral agreement was reached by the parties and, if so, the terms, (2) the "confirmation of order" was a confirmation of the oral agreement or a departure, (3) the parties were "merchants" as that term is used in the statute, (4) the arbitration provision in the "confirmation of order" was a material term not part of the oral agreement made between the parties, and (5) the parties had, by their conduct, established a contract, the eventual outcome being dependent upon the determination of these facts and the application of provisions of the uniform commercial code to them. (CLS 1961, § 600.5011; PA 1962, §§ 2201, 2207; GCR 1963, 117.2[3], 769.2).

20. Costs—Appeal and Error—Remand.

Costs are awarded to the party who eventually prevails, where the matter is remanded for further proceedings necessary to ultimate determination of the issues involved.

Appeal from Wayne; Gilmore (Horace W.), J. Submitted Division 1 January 5, 1967, at Detroit. (Calendar No. 2,935.) Decided November 21, 1967. Rehearing denied January 3, 1968. Leave to appeal denied March 18, 1968. See 380 Mich 762.

Complaint by American Parts Co., Inc., a Texas corporation, against American Arbitration Association and Deering Milliken, Inc., foreign corporations, seeking a stay of arbitration proceedings. Summary judgment for defendants. Plaintiff appeals. Reversed and remanded for further proceedings.

*Honigman, Miller, Schwartz & Cohn (Asher Rabinowitz* and *William J. Zousmer,* of counsel), for plaintiff.

*Clark, Klein, Winter, Parsons & Prewitt, (H. William Butler* and *Laurence M. Scoville, Jr.,* of counsel), for defendant Deering Milliken, Inc.

LEVIN, J.    This action was commenced by the plaintiff-appellant, American Parts Co., Inc., (hereafter referred to as the "purchaser"), against the defendants-appellees, American Arbitration Association and Deering Milliken, Inc. (Deering Milliken being hereafter referred to as the "seller"). The purchaser seeks a stay of arbitration proceedings demanded by the seller on July 19, 1966, pursuant to the arbitration provision of alleged contracts on printed forms called "confirmation of order," which were prepared, signed, and mailed by the seller to the purchaser but were never signed by the purchaser.

Claiming there is no genuine issue as to any material fact, the seller moved for summary judgment pursuant to GCR 1963, 117.2(3), and to compel arbitration in accordance with CLS 1961, § 600.5011 (Stat Ann 1962 Rev § 27A.5011).    See, also, GCR 1963, 769.2.    An affidavit in support of the motion and an answering opposing affidavit were filed.    The statements of fact in this opinion are taken from those affidavits.

## I.

On May 28, 1965, Gerrish H. Milliken, Jr., and Albert M. Kaufman, officers respectively of the seller and the purchaser, met in New York City to discuss the sale by the seller to the purchaser of a quantity of fabrics to be used in automobile seat covers.    The parties agree that some "under-

standing" was reached, but disagree as to the terms thereof.

Shortly after the meeting, the seller prepared, signed, and mailed to the purchaser confirmation of order No. 8387 (hereafter referred to as "8387") on the seller's printed form, which document Mr. Milliken asserts embodies a "firm agreement" for the sale and purchase of fabrics entered into by Mr. Kaufman and himself at their May 28, 1965, New York City meeting. In contrast, Mr. Kaufman states that "after some discussion [at the New York City meeting], it was suggested that Deering [the seller] prepare a written contract along the lines discussed and submit the same to Detroit Body Products [division of the purchaser] for its *approval* and execution." (Emphasis added.) Mr. Kaufman further asserts that upon returning to Detroit from an extended trip he found 8387 and immediately responded by a letter dated June 25, 1965, addressed to the seller:

"After going over this contract, I found everything to be satisfactory with the exception of the Rivoli pattern. I noted that your figures and your contract call for $1.75 per yard. I cannot recall acknowledging $1.75 on this fabric and my figures show $1.50. This would be the maximum we could go for this particular number.

"If this price meets with your approval and the proper change noted on the contract, it could be signed by us and forwarded to your office immediately."

Mr. Milliken replied in a letter dated June 28, 1965, asserting that 8387 correctly reflects a "firm agreement" entered into by the parties in New York City and requested return of a signed copy of 8387. The purchaser did not reply in writing to the seller's letter of June 28, 1965, but Mr. Kaufman

asserts that in further discussions with seller's representatives concerning 8387 he and other representatives of the purchaser continually maintained that 8387 did not reflect the understanding reached between Mr. Milliken and himself and had never been executed or accepted in any manner by the purchaser and, therefore, the purchaser was not bound by 8387.

On September 10, 1965, Mr. Milliken wrote Mr. Kaufman referring to "your attempts to have the price" for the Rivoli pattern "changed" from $1.75 to $1.50 per yard. Mr. Milliken's letter continued:

"This contract with you was made by Deering Milliken in good faith after all of the styles, yardages and prices had been worked out with you in detail here in New York and *the agreement, as made, was confirmed in writing to you with contract #8387.*" (Emphasis added.)

The purchaser replied by letter dated September 29, 1965, stating that a contract in writing had never been executed "because there was never a complete meeting of the minds" and that the completed deliveries had been "on the basis of specific transactions, and neither you nor we have been under any legal obligation except on specific purchases."

Nevertheless, from July, 1965, to February, 1966, the seller shipped to the purchaser well over 135,000 yards of fabrics,[1] including quantities of the Rivoli pattern. All such fabrics were accepted and paid for in full by the purchaser, including the invoices covering the Rivoli pattern, which pattern

---

[1] The quantity actually delivered by the seller to the purchaser was less than the approximately 151,700 yards called for in 8387 and the approximately 185,700 yards called for in 8387–01. It was the purchaser's refusal to accept the full quantity which prompted the seller's demand for arbitration.

was invoiced to and paid for by the purchaser at the $1.75 price alleged by the seller.

In December, 1965, Messrs. Milliken and Kaufman discussed the purchase of additional quantities of fabrics by the purchaser, following which confirmation of order No. 8387-01 (hereafter referred to as "8387-01") was prepared by the seller, and we now quote from Mr. Kaufman's affidavit, "along the lines discussed and submitted to Detroit Body Products for its approval and execution." Mr. Kaufman asserts that 8387-01 was never executed or accepted in any manner by the purchaser.

The seller claims that 8387 and 8387-01 are contracts and that the shipments were pursuant to 8387 or 8387-01. The seller relies heavily on the following language printed immediately above the signature lines on the front page of 8387 and 8387-01:

"This contract shall be construed and enforced under the laws of the State of New York, *and shall become effective* either (A) *when signed* and delivered by buyer to seller and accepted in writing by seller at its home office, evidenced by the signature of seller's agent below *or* (B) *when buyer accepts delivery* of all or any part of the goods herein described." (Emphasis added.)

Seller contends that the purchaser's acceptance of the 135,000 yards (including Rivoli pattern goods) constituted an acceptance of the seller's contract terms including the arbitration provision set forth in 8387 and 8387-01.

The purchaser responds that the shipments were separate or divisible transactions not governed by 8387 or 8387-01, and that it was, therefore, within its rights in advising the seller by letter dated February 22, 1966, to discontinue further shipments.

Mr. Kaufman's affidavit states that subsequent to February, 1966, the purchaser and the seller have continued their business relationship.

The trial judge found that 8387 was a binding contract, and he granted the seller's motion for summary judgment and to compel arbitration. The trial judge filed an opinion stating that the question to be decided was whether the confirmation of order dated May 28, 1965, (*i. e.*, 8387) was a contract within the meaning of GCR 1963, 769.2(1), concerning proceedings to compel or stay arbitration. The opinion did not refer to the alleged modification set forth in 8387–01 or to any events subsequent to September, 1965.

## II.

The seller contends that the purchaser may not challenge the effectiveness of 8387 because 8387 is a written confirmation within the meaning of section 2201 of the uniform commercial code, PA 1962, No 174, § 2201 (CL 1948, § 440.2201 [Stat Ann 1964 Rev § 19.2201])[2] adopted both in New York and Michigan, the parties being merchants and the purchaser having failed to object to 8387 within 10 days of its receipt. However, it is clear that the only effect of section 2201 "is to take away from the party who fails to answer [within the 10-day pe-

[2] "(1) Except as otherwise provided in this section a contract for the sale of goods for the price of $500.00 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.

"(2) Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) against such party unless written notice of objection to its contents is given within 10 days after it is received."

riod mentioned in that section] the defense of the statute of frauds; the burden of persuading the trier of the fact that a contract was in fact made orally prior to the written confirmation is unaffected."[3]

The parties also disagree concerning the application of section 2207 of the uniform commercial code;[4] and here again the question which emerges is whether 8387 is a written confirmation of a prior oral contract.

Section 2207 provides, *inter alia,* that an acceptance or a written confirmation operates as an acceptance even though it states terms additional to or different from those previously offered or agreed upon. The additional or different terms do not become a part of the contract unless agreed to by the other contracting party, except that between merchants additional, but not different, terms become part of the contract if they do not materially alter it and the other contracting party does not, within a reasonable time, object to the additional terms.

---

[3] Paragraph 3, Comments of National Conference of Commissioners on Uniform State Laws and American Law Institute, reprinted as annotation to Stat Ann 1964 Rev § 19.2201, p 279.

[4] "(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

"(2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

"(a) the offer expressly limits acceptance to the terms of the offer;
"(b) they materially alter it; or
"(c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

"(3) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this act."
PA 1962, No 174, § 2207 (CL 1948, § 440.2207 [Stat Ann 1964 Rev § 19.2207]).

Section 2207 is intended to validate understandings between parties even though the writings between them do not mesh with the precision traditionally required by the common-law rules of offer and acceptance. Although the principal emphasis is on the situation where there is an exchange of documents containing conflicting provisions, it is clear from both the code and the comments of the National Conference of Commissioners on Uniform State Laws and American Law Institute that the other typical situation sought to be covered is "the written confirmation, where an agreement has been reached either orally or by informal correspondence between the parties and is followed by *one* or both of the parties sending formal memoranda *embodying the terms so far as agreed upon and adding terms not discussed."* (Emphasis added.)[5]

Section 2207 proceeds on the assumption that businessmen frequently reach firm oral understandings not instantly reduced to writing and signed; that it is commonplace for one or both to confirm such understandings in writing; that not infrequently the writings differ but the parties, nevertheless, commence performance, impelled to do so by the exigencies of the business world. The policy of section 2207 is that the parties should be able to enforce their agreement, whatever it is, despite discrepancies between the oral agreement and the confirmation (or between an offer and acceptance) if enforcement can be granted without requiring either

---

[5] The comments relative to section 2207 as they were at the time of adoption of the uniform commercial code in Michigan are reprinted in annotation to 19 Stat Ann 1964 Rev § 19.2207, pp 286, 287. The quotation above is from these comments as they were amended in report No. 3 of the permanent editorial board for the uniform commercial code. We find no substantive change, merely clarification in the amendment of the earlier comments. See UCC Rep Ser, Cur Mat, UCC, art 2, p 21.

party to be bound to a material term to which he has not agreed.[6]

## III.

Applying that policy to this case, if, as the seller contends, there was a firm oral agreement in New York City which was later confirmed by 8387, it is that agreement which should be enforced. However, that pivotal, threshold question cannot be summarily resolved on the basis of the conflicting affidavits submitted by the parties in this case.

Mr. Kaufman asserts on affidavit that the oral understandings preceding both 8387 and 8387–01 contemplated that writings[7] would be submitted by the seller for "approval" by the purchaser. The use in Mr. Kaufman's affidavit of the word "ap-

---

[6] There are few judicial interpretations of section 2207. In *Application of Doughboy Industries, Inc.* (1962), 17 App Div 2d 216 (233 NYS2d 488), and *Tidewater Lumber Co., Inc., v. Maryland Lumber Company* (1966, NY S Ct Nassau County), 3 UCC Rep Ser 351, New York courts applied the policy of section 2207 in typical situations. The section has also been applied in *Roto-Lith, Ltd., v. F. P. Bartlett & Co., Inc.,* (CA 1, 1962), 297 F2d 497, in a manner which has been the subject of critical law review comment. The section has been discussed in many scholarly articles. Davenport, "How to Handle Sale of Goods: The Problem of Conflicting Purchase Orders and Acceptances and New Concepts in Contract Law," 19 Bus Law 75 (1963); Phalan, "Uniform Commercial Code—Sales—Inadvertent Acceptance of Buyer's Terms," 62 Dick L Rev 171 (1958); Weeks, "'Battle of the Forms' Under the Uniform Commercial Code," 52 Ill B J 660 (1964); "Contract Draftsmanship Under Article Two of the Uniform Commercial Code," 112 U Pa L Rev 564 (1964); "Contracts: Sale of Goods: Acceptance of Offer: Additional or Different Terms: Section 2207, Uniform Commercial Code: Section 84-a, New York Personal Property Law (New)," 46 Cornell L Q 308 (1961); "The Uniform Commercial Code and Contract Law: Some Selected Problems," 105 U Pa L Rev 836, 850 (1957); "Nonconforming Acceptances Under Section 2207 of the Uniform Commercial Code: An End to the Battle of Forms," 30 U Chi L Rev 540 (1963); "UCC Section 2207 and the 'Counter Offer': Acceptance Unlimited?" 57 NWU L Rev 477 (1962).

[7] The fact that a written confirmation is contemplated cannot alone negate the existence of a prior firm contract; otherwise, that part of section 2207 concerning confirmation in writing of a prior oral agreement would be restricted to the somewhat unusual situation where the parties do not contemplate a written confirmation of the oral agreement, but one or both of them send a written confirmation.

proval" is, of course, somewhat ambiguous. The word "approval" could mean merely a determination by the purchaser whether the written confirmation correctly reflects the "firm agreement" alleged by the seller. On the other hand, "approval" could mean the decision whether to enter into any agreement whatsoever—that the purchaser could withhold approval of the writing to be sent by the seller if it chose to do so; and, if that was the understanding of the parties, then 8387 would not be a writing confirmatory of "terms so far as agreed upon," nothing at all having yet been agreed upon. We do not regard this ambiguity in the affidavit as so egregious that we would be justified in assuming to resolve the entire controversy against the purchaser on that basis.

In so holding, we have in mind Mr. Kaufman's response to 8387, which stated that "after going over this contract I found everything to be satisfactory with the exception of the Rivoli Pattern." Those quoted words may well mean, as urged by the seller, that "everything" in 8387 was stated as agreed to at the New York City meeting—with the one excepton claimed by the purchaser; or they may mean that *if*[8] the seller would sell the Rivoli pattern for the price at which the purchaser desired to purchase it, the purchaser would, for the first time, be prepared to enter into a contract.

The reference in a letter to the seller from a subordinate employee of the purchaser to 8387-01 as "the recent revision of our contract with your company" is indeed an admission, but such admission does not preclude the purchaser from proving its

---

[8] "*If* this price meets with your approval and the proper change noted in the contract, it *could* be signed by us and *forwarded to* your office immediately." (Emphasis added.) From June 28, 1965, letter from Mr. Kaufman to Mr. Milliken (see above for additional portions of this letter).

factual assertions on affidavit that there never was
a contract. We are also mindful of the fact that
in his affidavit Mr. Kaufman stated that 8387 "did
not reflect the *understanding* reached between Ger-
rish H. Milliken and myself on or about May 28,
1965," thereby indicating that some understanding
was reached between them on that date. But, again,
we do not know whether the understanding was a
firm agreement or one which had not yet ripened
into a commitment.

We wish to stress that there is no finding before
us as to whether a firm oral agreement was reached
by the parties in New York City or whether 8387
is a confirmation of such a prior, firm, oral agree-
ment, and that, in any event, we review the record
before us to determine whether as a matter of law
there is a genuine issue of material fact and in so do-
ing are not governed by the "clear error" standard.
On a motion for summary judgment, disputed ques-
tions of fact may not be resolved, issues regarding
the credibility of witnesses may not be decided and
all inferences must be viewed in the light most
favorable to the party opposing the motion. *Beards-
ley* v. *R. J. Manning Company* (1966), 2 Mich App
172, 175. In his consideration of a motion for sum-
mary judgment, a trial judge may not anticipate
his role as trier of the fact (*Durant* v. *Stahlin*
[*Appeal in re Van Dusen, Elliott, Romney*] [1965],
375 Mich 628, 647), even though GCR 1963, 769
contemplates summary determination of a factual
dispute as to the existence of an agreement to arbi-
trate. If there is a genuine issue of material fact
as to whether there is such an agreement, that issue
must be decided upon an evidentiary, albeit sum-
mary, hearing.

## IV.

If the trial court finds that a firm agreement was reached in New York City, it will then be necessary to determine whether 8387 is a written confirmation of the oral agreement or so far departs therefrom as not to be a "confirmation." In this connection we note that the vitality of a written confirmation is not affected by the inclusion of some "different terms." Thus, if Mr. Kaufman's assertion in his letter of September 29, 1965, that "there was never a complete meeting of the minds" means only that the recollection of the parties as to what they agreed to in New York City does not coincide as to one relatively small item (i. e. the price of the Rivoli pattern),[9] 8387 would, nevertheless, be a written confirmation of any such prior firm oral agreement, even if it is ultimately determined that the price of the Rivoli pattern stated in the written confirmation is a "different term."

If the trial court finds that the parties at the New York City meeting entered upon a firm oral agreement confirmed by 8387, the next inquiry will be whether the arbitration provision is an "additional term." The seller stresses that 8387 was on the same printed form which had on a number of previous occasions been used to reflect contracts for the sale and purchase of fabrics entered into between the parties. The arbitration provision would not be an additional term if the parties had agreed at their New York City meeting that their "understanding" would be confirmed on the seller's standard form of confirmation of order. On the

---

9 The disputed price concerned 12,000 yards out of approximately 151,700 yards called for by 8387. The fabric prices for all the items stated in 8387 range from $1.15 to $1.90. The alleged revision of 8387 (8387-01) called for 185,700 yards at prices ranging from $1.00 to $1.90—2,600 yards of Rivoli is shown in 8387-01 at $1.75 and 9,400 yards at $1.65.

other hand, if the arbitration provision is an additional term, it would be deemed (under the provisions of clause [2] of section 2207) a "proposal for addition to the contract." Under section 2207 such proposal would not become part of the contract unless (1) agreed to by the purchaser or (2) the seller and the purchaser are merchants and the arbitration provision is regarded as an immaterial alteration of the prior oral agreement. Whether the parties are merchants and the materiality of the arbitration clause might well depend on facts beyond the documents and affidavits submitted in connection with the hearing on the motion for summary judgment.[10]

If the arbitration provision is an "additional term," Mr. Kaufman's June 25, 1966, letter in reply to 8387 (which letter stated "if" the Rivoli price disagreement was resolved to Mr. Kaufman's satisfaction, 8387 "could" be signed) did not constitute an acceptance of that additional term. The seller does not assert that the price dispute was thereafter expressly resolved or that the purchaser thereafter expressly agreed to 8387, but rather that the purchaser, by its conduct, must be deemed to have agreed to the higher price and to have accepted 8387, entirely apart from whether the purchaser agreed to the higher price at the New York City meeting as seller contends and purchaser denies.

However, we are also satisfied that neither the reference to 8387 by its number in the seller's numerous invoices accompanying the various deliveries of fabrics nor the purchaser's acceptance and payment for large quantities of fabrics, including the

_____
[10] Compare *Application of Doughboy Industries, Inc.* (1962), 17 App Div 2d 216 (233 NYS2d 488), stating that: "In the light of the New York cases, at least, there can be little question that an agreement to arbitrate is a material term, one not to be injected by implication, subtlety or inveiglement."

Rivoli pattern, may be regarded as acts manifest-
ing the purchaser's assent to an "additional term."

Section 2207 seeks to avoid the imposition on
businessmen of unagreed terms. Prior to section
2207 terms not agreed upon were often imposed
upon one party, generally the purchaser, in conse-
quence of that party's performance of an informal
agreement following receipt by such party of a
document setting forth additional, often boiler plate
terms.[11] The comments of the National Conference
of Commissioners on Uniform State Laws and the
American Law Institute indicate that material addi-
tional terms do not become part of the contract
"unless *expressly* agreed to by the other party."
(Reprinted at 19 Stat Ann 1964 Rev § 19.2207, p
286.)

Under section 2207, a party, except a merchant
in the case of an immaterial term, may ignore addi-
tional terms, and proceed with performance of the
agreement actually negotiated by the parties with-
out fear that such performance will be interpreted
by court or jury as acceptance of the other party's
additional terms. The fact that, following an oral
agreement, one or both of the parties resorts to
what some call the battle of forms, does not, under
section 2207, change the agreement or prevent the
formation of the contract, or place one party or
another in the position of waiving the benefit of
the agreement or becoming bound to unagreed small
or large print by proceeding with performance of
those terms upon which the parties, in fact, did
orally agree.

---

[11] Section 2207 and the problems (including the imposition of terms
contained in a writing sent to another party who accepts goods after
receipt of the writing) which prompted its inclusion in the code
are discussed with care in Duesenberg & King, Sales & Bulk Transfers
under UCC (Vol 3 of Bender's Uniform Commercial Code Service),
Chapter 3, Offer and Acceptance:   Conflicting Terms in Responsive
Document, pages 3–1 through 3–69.

Just as with any other "additional term," we must regard as extraneous that portion of a printed form confirming a prior oral agreement which states, as does the seller's form in this case, that the "contract" reflected in that form becomes effective upon signature by the purchaser or the purchaser's acceptance of all or part of the goods. While section 2207 literally provides that an *acceptance* can expressly be "made conditional on assent to the additional or different terms," it omits to state that a "written confirmation" can so provide, and we conclude that the omission was a deliberate choice by the experienced, careful draftsmen of the uniform commercial code.[12] We add that any other construction would be opposed to the policy of section 2207. Surely a party who has entered into an agreement cannot change that agreement by the simple expedient of sending a written "confirmation" containing additional or different terms including an additional "conditional assent" term providing that the other contracting party, by performing the previously agreed upon terms, agrees to all the unagreed upon additional or different terms.

The printed confirmation of order form of the seller in this case appears to be designed for use in accepting a buyer's written purchase order, as well as a written confirmation of a prior oral agreement. The conditional assent language may well be appropriate in the purchase order situation and may enable the seller in such a case to impose its contract terms on a buyer who accepts delivery. But not necessarily; for example, suppose the buyer precedes or responds to such a writing with one stating that shipment by the seller means that the seller has accepted the buyer's terms, all of them.

---

[12] See Davenport, *op cit*, p 83, n 23, stating that the "unless" clause in subsection 1 of section 2207 refers only to the offer-acceptance situation.

The theme of section 2207 is that tidy draftsmanship or clausemanship may not end the inquiry.  See Duesenberg & King, Sales & Bulk Transfers under UCC (Vol 3 of Bender's Uniform Commercial Code Service), Chapter 3, Offer and Acceptance: Conflicting Terms in Responsive Document, pages 3–55, *et seq.*; and "Nonconforming Acceptances Under Section 2207 of the Uniform Commercial Code: An End to the Battle of Forms," 30 U Chi L Rev 540, 547 (1963).[13]

The inclusion in 8387 of such "conditional assent" language[14] did not, in our opinion, negate the effectiveness of 8387 as a written confirmation of the terms of any oral agreement reached in New York City, if 8387 otherwise was a "written confirmation" of any such prior oral agreement.  In the case of a confirmation, conditional assent language should be regarded as an additional material term which will not be deemed accepted unless, like all other material terms, it is expressly agreed to by the other party.

Section 2207 recognizes, indeed its genesis is the assumption, that businessmen use forms that do not always fit their circumstances and which frequently contain significant modifications of the simple oral agreement of the parties in the form of boiler plate which generally is not read by the other contracting party and perhaps is not expected to be read.[15]

Rather than being opposed to the common law, section 2207 in its flexibility is in the best tradition of the common law.  Section 2207 is a mandate upon the courts to discard the concept that an act,

---

[13] We do not here intimate any opinion as to whether the language used in the Deering Milliken form is a conditional assent clause meeting the requirements of section 2207.

[14] For text of "conditional assent" language see paragraph following footnote 1.

[15] See, for example, *Application of Doughboy Industries, Inc., supra; Tidewater Lumber Co., Inc., v. Maryland Lumber Company, supra; Roto-Lith, Ltd., v. F. P. Bartlett & Co., Inc., supra.*

verbal or nonverbal, cannot be both an acceptance and a rejection of an offer—an acceptance of that upon which the parties agree and a rejection of that upon which (although verbalized by one party) the parties disagree. The determination of what has or has not been agreed upon will, of course, continue to be made by the trier of fact, but, in making that determination, the factfinder is no longer bound by the last manifestation. Rather all subsisting manifestations are to be considered.

If the trial court concludes that a firm agreement was not reached in New York or that 8387 is not a written confirmation thereof, consideration should be given to the possible application of clause (3) of section 2207. We interpret clause (3) as applicable only in a situation where a contract cannot be established by the writing or writings of the parties and conduct of the parties establishes the existence of a contract.

From a commercial point of view our decision has the advantage of holding the purchaser to any oral agreement reached in New York City which was confirmed by 8387. At the same time it prevents the seller from imposing on the purchaser an obligation to arbitrate merely because the purchaser proceeded with performance[16] unless the purchaser has agreed to the arbitration clause or the parties are found to be merchants and the arbitration clause is found to be an immaterial term.

Reversed and remanded for further proceedings not inconsistent with this opinion. Costs awarded to the party who ultimately prevails.

Lesinski, C. J., and Holbrook, J., concurred.

---

[16] Duesenberg & King, Sales & Bulk Transfers under UCC, *op cit.*, p 3–24.