George Y. SHPILBERG, Appellant,

v.

MERRILL LYNCH, PIERCE, FENNER
& SMITH, INC., Appellee.

Supreme Court of Kentucky.

Jan. 23, 1976.

Rehearing Denied May 7, 1976.

**228**

Edward M. Steutermann, Goldberg, Steutermann & Nicholas, Louisville, for appellant.

Morris B. Borowitz, Borowitz, Slyn, Goldsmith & Ballard, Louisville, for appellee.

PER CURIAM.

George Y. Shpilberg appeals from a judgment holding him liable to the brokerage firm of Merrill Lynch, Pierce, Fenner & Smith, in the sum of $22,300, as damages for breach of an alleged contract under which Shpilberg agreed to purchase $1,000,000 face amount of TVA bonds at the price of $1,005 per thousand dollar bond. The circuit court made a summary determination that Shpilberg had breached the contract, and then conducted a trial on the issue of damages.

Shpilberg's primary contention on this appeal is that the summary determination that he had breached the contract was error because there was a genuine issue of fact as to whether there was a contract in existence. He maintains that Merrill Lynch had the burden of proving that there was a contract, or at the least he was entitled to offer proof that there was no contract.

The problem grows out of the fact that the alleged contract on which Merrill Lynch sued was evidenced only by a broker's confirmation slip which was mailed to Shpilberg and to which he made no written objection within ten days of its receipt by him. The circuit court held that under KRS 355.8–319 (a section of the Uniform Commercial Code) the confirmation slip, not objected to in writing within ten days, established the existence of a contract, which could not be contradicted by mere testimony that the parties never had reached a firm oral agreement. Shpilberg maintains that the statute merely lifted the bar of the Statute of Frauds, and that Merrill Lynch was not relieved of the burden of proving that there was an oral contract in the terms stated in the confirmation slip, or in any event Shpilberg was entitled to offer proof that there was no oral contract.

The issue requires an interpretation of KRS 355.8–319, the language of which is:

"(1) A contract for the sale of securities is not enforceable by way of action or defense unless

(a) there is some writing signed by the party against whom enforcement is sought or by his authorized agent or broker sufficient to indicate that a contract has been made for sale of a stated quantity of described securities at a defined or stated price; or

(b) delivery of the security has been accepted or payment has been made but the contract is enforceable under this provision only to the extent of such delivery or payment; or

(c) within a reasonable time a writing in confirmation of the sale or purchase and sufficient against the sender under paragraph (a) has been received by the party against whom enforcement is sought and he has failed to send written objection to its contents within ten (10) days after its receipt; or

(d) the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract was made for sale of a stated quantity of described securities at a defined or stated price."

Admittedly, Merrill Lynch mailed to Shpilberg a confirmation slip, signed by Merrill Lynch, describing the securities sold, stating the quantity, and stating the price

per $1,000 bond and the gross price, and he did not within ten days of receipt of the slip send written objections. He did, however, on the day the slip was placed in the mail and before he received it, have a telephone conversation with Merrill Lynch concerning the bond transaction. On the motion for summary judgment the showing was that his testimony would be that he told Merrill Lynch that he did not desire to make an agreement to buy the bonds, the parties not then having advanced beyond the negotiating stage, while the evidence for Merrill Lynch would be that he said he wanted to get out of his agreement to buy the bonds, which definitely had been made. Our question is whether the circuit court correctly interpreted the statute to mean that the confirmation slip, unobjected to, established the existence of the contract, not subject to contradiction by mere testimony that there was no contract.

It will be noted that the statute (as it relates to this case) provides that a contract for the sale of securities is not enforceable unless the party against whom enforcement is sought either:

> 1. Has signed a writing sufficient to indicate that a contract has been made for sale of a stated quantity of described securities at a defined or stated price; or
>
> 2. Within a reasonable time has received from the other party a writing that would be sufficient to bind the other party and has failed within ten days after its receipt to send written objections to its contents.

◼ We think the clear meaning to be derived from the words of the statute is that the party who has received the writing and not objected to it is in the same legal position, as concerns enforceability, as the party who signed the writing. We cannot find in the statute any basis for holding that where the party against whom enforcement is sought is the party to whom the writing was sent, and to which he did not object, he has any greater rights than the party who signed and sent the writing.

Calamari, in The Law of Contracts, in effect agrees with our interpretation of the statute because in a footnote to Section 313, Chapter 16 of his work, on page 487, in reference to the comparable provision of section 2–201 of the Commercial Code (relating to sales of goods), he says that the nonobjecting receiver of the writing is in the equivalent position of having *signed* the writing. The official comment under Section 2–201 says the same thing.

◼ We are aware that the official comment under Section 2–201 of the Commercial Code goes on to say that the only effect of the failure to give written notice of objection is to deprive the party who received the writing of the defense of the Statute of Frauds, and that the burden of persuading the trier of fact that a contract was in fact made orally prior to the sending of the written confirmation is unaffected. We are aware also of the decision of some courts interpreting Section 2–201 as the comment would indicate. See *American Parts Co., Inc. v. American Arbitration Ass'n* (1967), 8 Mich.App. 156, 154 N.W.2d 5; *Harry Rubin & Sons, Inc. v. Consolidated Pipe Co. of America* (1959), 396 Pa. 506, 143 A.2d 472. However, the comment obviously does not mean that the *writing*, which under the statute is required to be sufficient to "indicate that a contract has been made," is not acceptable *evidence* of the fact that a contract was made. In *Tripp v. Pay 'N Pak Stores, Inc.* (1974), Or., 518 P.2d 1298, the court specifically held that the writing was evidence sufficient to sustain the findings of the trial court that there was a contract. The holding in *Harry Rubin & Sons*, supra, was to the same effect. And, of course the whole purpose of the writing required by a Statute of Frauds is to provide *evidence* of a contract. 72 Am.Jur.2d, Statute of Frauds, sec. 285, p. 805.

◼ Since it appears that the writing is acceptable evidence of the existence of a contract, the question then is *how conclusive* evidence is it? We think the answer must be that if the writing contains all of the essential elements of a contract, rather than being merely a skeleton memorandum, it should be treated as conclusive evidence of the existence of the contract, subject to

attack only on the grounds on which a written contract may be attacked. Surely where as here, the writing recites that on a stated day the broker sold a stated quantity of clearly described securities at a stated price per unit totalling a stated gross price, with payment to be made on a stated settlement date, and the broker has signed the writing, he, if sued, would not be heard to say that there was no contract, unless he offered to explain away the writing. And the statute puts the nonobjecting receiver of the writing in the same legal position as the signer.

What we have just said is, we think, the substance of the holding in *Alderson v. Francis I. Dupont & Co.* (1971), Fla.App., 251 So.2d 710, where the court said that if the receiver of the writing wishes to deny the existence of the contract he must object within ten days, and if he fails to do so, the other party has the right to enforce the terms of the contract (set forth in full in a confirmation letter).

■ In accord is the law under the traditional Statute of Frauds. In 37 C.J.S. Frauds, Statute of § 281, p. 809, the general rule is stated to be that a memorandum sufficient under the statute may not be *contradicted* by parol evidence, though it may be attacked on the grounds of fraud or mistake. This means, we think, that if the writing clearly shows the existence of a contract, it is conclusive evidence of that fact to the extent that it cannot be contradicted simply by parol evidence that there was no agreement.

■ In the instant case the confirmation slip set forth all of the elements of a complete contract. Shpilberg did not claim by way of defense that his failure to send written objections (which put him in the equivalent position of having signed the writing) was due to fraud, mistake or other excusing cause. He simply claimed that the parties never got beyond the negotiating stage to the point of reaching a firm agreement for the sale of the bonds. In these circumstances we think the confirmation slip was entitled to be treated as conclusive evidence of the contract, warranting summary judgment for Merrill Lynch.

■ Shpilberg argues that the confirmation slip did not meet the requirement of the statute that it state the sale *price* of the securities, because the negotiations contemplated that Shpilberg would be given a margin-purchase loan. We think that this was not a matter of insufficiency of the writing, but of a variance of the writing from the terms of the oral agreement, which Shpilberg could raise only by written objection sent within the prescribed ten-day period.

This court does not find sufficient merit to warrant discussion in Shpilberg's contention that there was an issue of fact as to a claimed breach of the contract by Merrill Lynch, and that the trial court erred in fixing the damages by reference to the market price of the bonds at the close of the market on a certain day rather than at the opening of the market on that day.

The judgment is affirmed.

All concur.