216

In the Matter of the Arbitration between DOUGHBOY INDUSTRIES INC., Appellant, and PANTASOTE COMPANY, Respondent.

First Department, November 13, 1962.

*Edwin H. Baker* of counsel (*Gilbert & Segall*, attorneys), for appellant.

*Charles H. Cohen* of counsel (*Kaye, Scholer, Fierman, Hays & Handler*, attorneys), for respondent.

BREITEL, J. This case involves a conflict between a buyer's order form and a seller's acknowledgment form, each memorializing a purchase and sale of goods. The issue arises on whether the parties agreed to arbitrate future disputes. The seller's form had a general arbitration provision. The buyer's form did not. The buyer's form contained a provision that only a signed consent would bind the buyer to any terms thereafter transmitted in any commercial form of the seller. The seller's form, however, provided that silence or a failure to object in writing would be an acceptance of the terms and conditions of its acknowledgment form. The buyer never objected to the seller's acknowledgment, orally or in writing. In short, the

buyer and seller accomplished a legal equivalent to the irresistible force colliding with the immovable object.

Special Term denied the buyer's motion to stay arbitration on the ground that there was no substantial issue whether the parties had agreed to arbitrate. For the reasons to be stated, the order should be reversed and the buyer's motion to stay arbitration should be granted. As a matter of law, the parties did not agree in writing to submit future disputes to arbitration (Civ. Prac. Act, §§ 1448, 1449).

Of interest in the case is that both the seller and buyer are substantial businesses — a "strong" buyer and a "strong" seller. This is not a case of one of the parties being at the bargaining mercy of the other.

The facts are:

During the three months before the sale in question the parties had done business on two occasions. On these prior occasions the buyer used its purchase-order form with its insulating conditions, and the seller used its acknowledgment form with its self-actuating conditions. Each ignored the other's printed forms, but proceeded with the commercial business at hand.

The instant transaction began with the buyer, on May 6, 1960, mailing from its office in Wisconsin to the seller in New York City two purchase orders for plastic film. Each purchase order provided that some 20,000 pounds of film were to be delivered in the future on specified dates. In addition, further quantities were ordered on a "hold basis", that is, subject to "increase, decrease, or cancellation" by the buyer. On May 13, 1960 the seller orally accepted both purchase orders without change except to suggest immediate shipment of the first part of the order. The buyer agreed to the request, and that day the seller shipped some 10,000 pounds of film in partial fulfillment of one purchase order. On May 16, 1960, the buyer received the seller's first acknowledgment dated May 13, 1960, and on May 19, 1960 the seller's second acknowledgment dated May 16, 1960. Although the purchase orders called for written acceptances and return of attached acknowledgments by the seller no one paid any attention to these requirements. Neither party, orally or in writing, objected to the conditions printed on the other's commercial form. Later, the buyer sent change orders with respect to so much of the orders as had been, according to the buyer, on a "hold basis".

The dispute, which has arisen and which the parties wish determined, the seller by arbitration, and the buyer by court litigation, is whether the buyer is bound to accept all the goods ordered on a "hold basis". The arbitration would take place in

New York City. The litigation might have to be brought in Wisconsin, the buyer's home State.

The buyer's purchase-order form had on its face the usual legends and blanks for the ordering of goods. On the reverse was printed a pageful of terms and conditions. The grand defensive clause reads as follows: " ALTERATION OF TERMS — None of the terms and conditions contained in this Purchase Order may be added to, modified, superseded or otherwise altered except by a written instrument signed by an authorized representative of Buyer and delivered by Buyer to Seller, and each shipment received by Buyer from Seller shall be deemed to be only upon the terms and conditions contained in this Purchase Order except as they may be added to, modified, superseded or otherwise altered, notwithstanding any terms and conditions that may be contained in any acknowledgment, invoice or other form of Seller and notwithstanding Buyer's act of accepting or paying for any shipment or similar act of Buyer."

The buyer's language is direct; it makes clear that no variant seller's acknowledgment is to be binding. But the seller's acknowledgment form is drafted equally carefully. On its front in red typography one's attention is directed to the terms and conditions on the reverse side; and it advises the buyer that he, the buyer, has full knowledge of the conditions and agrees to them unless within 10 days he objects in writing.

The seller's clause reads:

" IMPORTANT

" Buyer agrees he has full knowledge of conditions printed on the reverse side hereof; and that the same are part of the agreement between buyer and seller and shall be binding if either the goods referred to herein are delivered to and accepted by buyer, or if buyer does not within ten days from date hereof deliver to seller written objection to said conditions or any part thereof."

On the reverse side the obligations of the buyer set forth above are carefully repeated. Among the conditions on the reverse side is the general arbitration clause.

This case involves only the application of the arbitration clause. Arguably, a different principle from that applied here might, under present law,* govern other of the terms and conditions in either of the commercial forms. The reason is the special rule that the courts have laid down with respect to arbitration clauses, namely, that the agreement to arbitrate must be direct and the intention made clear, without implication, inveiglement

---

\* See, as to future law, discussion, *infra*, of applicable provisions of the Uniform Commercial Code, effective in this State on September 27, 1964.

or subtlety (*Matter of Riverdale Fabrics Corp.* [*Tillinghast-Stiles Co.*], 306 N. Y. 288, 289, 291; *Matter of Lehman* v. *Ostrovsky,* 264 N. Y. 130, 132; see, also, *Matter of Amer. Rail & Steel Co.* [*India Supply Mission*], 308 N. Y. 577, 579–580; *Matter of Princeton Rayon Corp.* [*Gayley Mill Corp.*], 309 N. Y. 13, involving conflicting forms). The severability of arbitration clauses from other provisions in commercial documentation would, of course, follow, if it be true that the threshold for clarity of agreement to arbitrate is greater than with respect to other contractual terms (see *Matter of General Silk Importing Co.,* 198 App. Div. 16, 200 App. Div. 786, affd. 234 N. Y. 513; see, also, *Matter of Arthur Philip Export Corp.* [*Leathertone, Inc.*], 275 App. Div. 102, 104–105; but cf. *Matter of Albrecht Chem. Co.* [*Anderson Trading Corp.*], 298 N. Y 437, 440–441).

It should be evident, as the buyer argues, that a contract for the sale of goods came into existence on May 13, 1960 when the seller made a partial shipment, especially when following upon its oral acceptance of the buyer's purchase order (Restatement, Contracts, § 63; 1 Williston, Sales [rev. ed.], § 5b; Personal Property Law, § 85, subd. 1, par. [b]). The contract, at such time, was documented only by the buyer's purchase-order form. However, that is not dispositive. It is equally evident from the prior transactions between these parties, and general practices in trade, that more documents were to follow. Such documents may help make the contract, or modify it (12 Am. Jur., Contracts, § 405; 10 N. Y. Jur., Contracts, § 403). Whether the subsequent documents were necessary to complete the making of the contract (as would be true if there had been no effective or valid acceptance by partial shipment), or whether they served only to modify or validate the terms of an existing contract (as would be true if there had been a less formal written acceptance, merely an oral acceptance, or an acceptance by partial shipment of goods) is not really too important once the commercial dealings have advanced as far as they had here. By that time, there is no question whether there was a contract, but only what was the contract.

Recognizing, as one should, that the business men in this case acted with complete disdain for the "lawyer's content" of the very commercial forms they were sending and receiving, the question is what obligation ought the law to attach to the arbitration clause. And in determining that question the traditional theory is applicable, namely, that of constructive knowledge and acceptance of contractual terms, based on prior transactions and the duty to read contractual instruments to which one is a party

(*Matter of Level Export Corp.* [*Wolz, Aiken & Co.*], 305 N. Y. 82, 86–87; *Matter of Wachusett Spinning Mills* [*Blue Bird Silk Mfg. Co.*], 7 A D 2d 382, affd. 6 N Y 2d 948; cf. *Matter of Riverdale Fabrics Corp.* [*Tillinghast-Stiles Co.*], 306 N. Y 288, *supra*).

But, and this is critical, it is not only the seller's form which should be given effect, but also the buyer's form, for it too was used in the prior transactions, and as to it too, there was a duty to read. Of course, if the two commercial forms are given effect, they cancel one another. (Certainly, the test is not which is the later form, because here the prior form said the buyer would not be bound by the later form unless it consented in writing. It needs little discussion that silence, a weak enough form of acceptance, effective only when misleading and there is a duty to speak, can be negatived as a misleading factor by announcing in advance that it shall have no effect as acceptance [Restatement, Contracts, § 72; 1 Corbin, Contracts, §§ 72–75; 9 N. Y. Jur., Contracts, §§ 34, 45].)

As pointed out earlier, an agreement to arbitrate must be clear and direct, and must not depend upon implication, inveiglement or subtlety (*Matter of Riverdale Fabrics Corp.* [*Tillinghast-Stiles Co.*], 306 N. Y. 288, 289, 291, *supra*; *Matter of Lehman v. Ostrovsky*, 264 N. Y. 130, 132, *supra*). It follows then that the existence of an agreement to arbitrate should not depend solely upon the conflicting fine print of commercial forms which cross one another but never meet (cf. *Matter of Princeton Rayon Corp.* [*Gayley Mill Corp.*], 309 N. Y. 13, *supra*; *Matter of American Rail & Steel Co.* [*India Supply Mission*], 308 N. Y. 577, *supra*).

*Matter of Wachusett Spinning Mills* (*Blue Bird Silk Mfg. Co.*) (7 A D 2d 382, affd. 6 N Y 2d 948, *supra*) provides no applicable rule. There the seller's acknowledgment of the buyer's purchase order (which included an arbitration clause) expressly accepted the purchase order by reference and designation. Although the acknowledgment contained additional terms, the specific reference to the purchase order was held determinative that the acknowledgment was an acceptance of the purchase order with all its terms. Thus, it was said (per RABIN, J., p. 383): "The position of the petitioners might be sound if the confirmation orders made no reference to the original orders containing the arbitration clause. On the contrary however, the confirmation orders were in such form as to show an intent to incorporate all the terms of the original orders — except, of course, as to specific changes stated." In this case, the supposed condition happened, the acknowledgment made no reference to the purchase order, and, moreover, the prior purchase order disavowed the

future application of any subsequent differing acknowledgment. And, the arbitration clause was one of the "specific changes" from the purchase order, which even under the rule in the *Wachusett* case would not be binding on the other party.

Consequently, as a matter of law there was no agreement to arbitrate in this case, if one applies existing principles.[*]

But the problem of conflicting commercial forms is one with which there has been much concern before this, and a new effort at rational solution has been made. The new solution would yield a similar result. The Uniform Commercial Code (L. 1962, ch. 553) takes effect in this State September 27, 1964 (§ 10–105). It reflects the latest legislative conclusions as to what the law ought to be. It provides:

" § 2–207. Additional Terms in Acceptance or Confirmation.

" (1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

" (2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

" (a) the offer expressly limits acceptance to the terms of the offer;

" (b) they materially alter it; or

" (c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

" (3) Conduct by both parties which recognizes the existence

---

[*] The parties have not argued which law, that of New York or elsewhere, should be applied in this case, but have assumed that it is the law of New York. This assumption is followed here, in the absence of contrary suggestion by either of the parties. The assumption, moreover, is supported by the fact that the arbitration clause provided for arbitration in the City of New York; required the parties' consent to jurisdiction of the State and Federal courts sitting in the State of New York; the buyer's offer was orally accepted in New York; and, assuredly, the arbitration agreement, if effective, would be governed by the law of New York (*Matter of Marchant* v. *Mead-Morrison Mfg. Co.*, 252 N. Y. 284, 293–294). There were, of course, other *loci* in the case. While not said of the "making" of an agreement to arbitrate, it has been generalized: "It is widely held that the parties who have chosen the place of arbitration have thus impliedly agreed on the applicability of both the procedural and substantive law of that place" (Ehrenzweig, Conflict of Laws, p. 540. To the same effect see Lorenzen, Selected Articles on the Conflict of Laws, 496–505; Lorenzen, Commercial Arbitration — International and Interstate Aspects, 43 Yale L. J. 716; also, see, Ehrenzweig, *op. cit.*, p. 158 *et seq.*).

of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this Act."

While this new section is not in its entirety in accordance with New York law in effect when the events in suit occurred (see 1 Report of N. Y. Law Rev. Comm. on Uniform Commercial Code [1955], p. 627 *et seq.*), in its particular application to the problem at hand it is quite useful.* The draftsmen's comments to section 2–207 are in precise point (Uniform Commercial Code [U. L. A.], § 2–207, comments 3 and 6). Thus, it is said:

" 3. Whether or not additional or different terms will become part of the agreement depends upon the provisions of subsection (2). If they are such as materially to alter the original bargain, they will not be included unless expressly agreed to by the other party. If, however, they are terms which would not so change the bargain they will be incorporated unless notice of objection to them has already been given or is given within a reasonable time. * * *

" 6. If no answer is received within a reasonable time after additional terms are proposed, it is both fair and commercially sound to assume that their inclusion has been assented to. Where clauses on confirming forms sent by both parties conflict each party must be assumed to object to a clause of the other conflicting with one on the confirmation sent by himself. As a result the requirement that there be notice of objection which is found in subsection (2) is satisfied and the conflicting terms do not become a part of the contract. The contract then consists of the terms originally expressly agreed to, terms on which the confirmations agree, and terms supplied by this Act, including subsection (2)."

On this exposition, the arbitration clause, whether viewed as a material alteration under subsection (2), or as a term nullified

---

* See, also, section 84-a of the Personal Property Law (enacted by L. 1960, ch. 360, eff. Sept. 1, 1960) which reads: " § 84-a. Immaterial variance between offer and acceptance. An expression of acceptance of an offer to make a contract to sell or a sale of goods, including an offer to buy goods, shall not be insufficient as an acceptance of the offer merely because it states additional or different terms which do not materially vary the terms of the offer unless the acceptance is expressly made conditional on assent to the additional or different terms. Where the expression of acceptance is not insufficient as an acceptance of the offer, the additional or different terms which it states shall be deemed an offer for addition to or modification of the contract." This section too was not in effect when the events in suit occurred.

by a conflicting provision in the buyer's form, would fail to survive as a contract term. In the light of the New York cases, at least, there can be little question that an agreement to arbitrate is a material term, one not to be injected by implication, subtlety or inveiglement. And the conclusion is also the same if the limitation contained in the offer (the buyer's purchase order) is given effect, as required by paragraph (a) of subsection 2 of the new section.

Accordingly, the order denying petitioner-appellant buyer's motion to stay arbitration should be reversed, on the law, with costs to petitioner-appellant and the motion should be granted.

BOTEIN, P. J., VALENTE, McNALLY and EAGER, JJ., concur.

Order, entered on April 13, 1962, denying petitioner-appellant buyer's motion to stay arbitration, unanimously reversed, on the law, with $20 costs and disbursements to appellant, and the motion granted.