**Just Born, Inc. v. Stein, Hall & Co., Inc.**

*Mark H. Scoblionko,* for plaintiff.
*Gross, Herster & Newton,* for defendant.
*Edward H. Feege,* for additional defendant.

WILLIAMS, J., November 1, 1971.—This case is before the court on defendant's petition for a rule to show cause why the dispute between the parties involved in this assumpsit action should not be taken to arbitration pursuant to the provisions contained in defendant's "Sales Acknowledgment Agreement."

During 1967, plaintiff, a candy manufacturer, made various purchases of gelatin from defendant. The gelatin was produced by the additional defendant with whom plaintiff had no direct dealings. Plaintiff filed the present action alleging that the gelatin was not fit for its intended use. Defendant joined additional defendant and the parties engaged in extensive discovery proceedings prior to the filing of the present petition.

The issue of whether the present dispute is subject to arbitration may be characterized as the "battle of conflicting forms" used by buyer and seller and arose in the following manner:

On six occasions between May and September 1967,

plaintiff telephoned orders for various quantities of gelatin from defendant and followed these oral communications with written purchase orders specifying the terms of the agreement such as price, quantity and description of goods. Thereafter defendant sent a "Sales Acknowledgment Agreement" and shipped the gelatin to plaintiff's plant. On the first and sixth shipments, the "Sales Acknowledgement Agreement" arrived one day after the shipment of gelatin reached plaintiff; on the second, third and fourth shipments, the "Sales Acknowledgment Agreement" came before the gelatin arrived at plaintiff's plant; and on the fifth shipment, the "Sales Acknowledgment Agreement" came on the same day as the gelatin.

Plaintiff's purchase order forms were silent as to the mode of settling disputes. Defendant's "Sales Acknowledgment Agreements," on their front side, contained the following paragraph under the heading "Arbitration Clause":

"Any controversy or claim arising out of or relating to this agreement, or the breach thereof, shall be settled by arbitration in New York, N. Y., pursuant to the rules, then obtaining, of the American Arbitration Association and the laws of New York. Judgment may be entered upon the award in any court having jurisdiction."

Defendant contends that under the terms of the Uniform Commercial Code, 12A PS §2-207 (hereinafter section 2-207), the "Sales Acknowledgment Agreements" were definite and seasonable acceptances of plaintiff's purchase orders and that the arbitration clause contained therein was an additional term which should be construed as having become part of the contracts. Plaintiff cites section 2-207 for the opposite proposition, namely that the arbitration clause was an additional term which materially altered the offer to

purchase the gelatin and thus did not become part of the contracts between plaintiff and defendant.

Section 2-207 provides:

"(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

"(2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

"(a) the offer expressly limits acceptance to the terms of the offer;

"(b) they materially alter it; or

"(c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

"(3) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms of the parties on which the writings agree, together with any supplementary terms incorporated under any other provision of this Act."

Applying section 2-207 to the facts of the case at bar, it is clear that a contract was formed by the exchange of forms between plaintiff and defendant, and that the arbitration clause contained in defendant's "Sales Acknowledgment Agreement" forms was an additional term. The Uniform Commercial Code, comment 2 to section 2-207 provides:

"Under this Article a proposed deal which in commercial understanding has in fact been closed is recog-

nized as a contract. Therefore, any additional matter contained in the confirmation or in the acceptance falls within subsection (2) and must be regarded as a proposal for an added term unless the acceptance is made conditional on the acceptance of the additional or different terms."

Defendant's "Sales Acknowledgment Agreements" did not contain language expressly conditioning its acceptance. Further, the actions of the parties in shipping and accepting delivery of the gelatin manifested a commercial understanding that their deal was closed. Both parties, in essence, agree to this proposition but disagree on the application of section 2-207(2) to the arbitration clause.

The pleadings indicate that both plaintiff and defendant are merchants; therefore, the arbitration clause would become a part of the contracts unless it runs afoul of the three caveats of section 2-207(2). Subsections 2-207(2)(a) and 2-207(2)(c) do not hinder the inclusion of the arbitration clause. Nowhere on plaintiff's purchase order forms did the offers to purchase the gelatin expressly limit acceptance to the terms of the offer. In addition, plaintiff admits that it made no objection to the additional clause as prescribed by subsection 2-207(2)(c).

The parties differ, however, as to whether the arbitration clause is a "material alteration" of the contract within the terms of subsection 2-207(2)(b). Defendant argues that the arbitration clause does not materially alter the contracts but merely sets forth the forum in which any disputes are to be decided without changing the substantive rights of either party with respect to the contracts. Defendant urges the court to follow Roto-Lith v. Bartlett, 297 F.2d 497 (C.A. 1, 1962), which was the first case to interpret section 2-207. Plaintiff cites Application of Doughboy Industries, 233

N.Y.S. 2d 488 (1962), and its New York progeny for the opposite proposition that an arbitration clause is a material term and requires the assent of both parties. There appear to be no reported Pennsylvania cases, either trial or appellate, which have construed section 2-207(2)(b).

In our opinion, Roto-Lith v. Bartlett is inapplicable to the case at bar. While it involved a battle of forms, the issue in Roto-Lith was whether a disclaimer of warranty clause on one of the forms was included in the contract. We do not agree with the court's reasoning in that case and are unwilling to extend it to the present issue.

In Application of Doughboy Industries, supra, the New York court ruled that an arbitration clause contained in the seller's form but not in the buyer's form was a "material alteration" and under section 2-207 did not become a part of the contract between the parties. In determining that the arbitration clause was a "material alteration," the New York court based its conclusion on the well-settled principle that in New York an agreement to arbitrate had to be clear and direct and could not depend upon implication, inveiglement or subtlety. Elaborating on this principle, the court held:

"It follows then that the existence of an agreement to arbitrate should not depend solely upon the conflicting fine print of commercial forms which cross one another but never meet . . ." (p. 493).

The Pennsylvania policy with regard to arbitration agreements is similar to the New York law relied upon by Doughboy. In Scholler Bros., Inc. v. Hagen Corp., 158 Pa. Superior Ct. 170, 173 (1945), it was held that:

". . . [A]s an arbitration agreement bars recourse to the courts where arbitrators are named in advance at common law, . . . and even if not named in ad-

vance under the Act of 1927, the assent to relinquish a trial by jury is not to be found by mere implication."

Scholler further noted that:

"No technical or formal words are necessary to constitute a reference of a controversy to arbitration, but it must clearly appear that the intention of the parties was to submit their differences to a tribunal and to be bound by the decision reached by that body on deliberation."

Defendant wisely does not contend that there was actual assent or a meeting of the minds to include the arbitration clause in the present case, but urges that it be included by implication under section 2-207 of the code.

In our opinion, Doughboy is a proper interpretation of section 2-207 and is consistent with the principle of Scholler that an agreement to arbitrate is not to be found by implication. It should be noted that Doughboy has been uniformly followed in New York: Trafalgar Square Ltd. v. Reeves Bros., Inc., 7 U.C.C. Rptr. Serv. 712; In re Barclay Knitwear, 8 U.C.C. Rptr. Serv. 44; Empire Steel Trading v. Parson & Crosland, Ltd., 5 U.C.C. Rptr. Serv. 1180.[*]

We conclude, therefore, that the arbitration clause contained in defendant's "Sales Acknowledgment Agreement" forms was an additional term which materially altered the offer and, as such, did not become a part of the contract between defendant and plaintiff.

## ORDER OF COURT

And now, November 1, 1971, defendant's rule to show cause is denied and dismissed.

___

[*] In Bauer International Corp. v. Eastern Twp. Produce Ltd., 4 U.C.C. Rptr. Serv. 735, the court held an arbitration clause was included in the contract where the clause appeared in the buyer's form and the seller was the party seeking arbitration.