Arnold L. Fein, J.
This is a special proceeding seeking a permanent stay of arbitration.
On or about January 29, 1974, petitioner (Tunis) orally ordered certain piece goods from respondent (Allen) and sent or delivered to Allen, petitioner’s "piece goods purchase order” form No. 002710, which stated in pertinent part:
*1092 "2. This order is the only agreement between the parties and supercedes any documents transmitted by the seller unless signed by an officer of the buyer. No notice or legend on any invoice or document sent by seller to buyer may contradict any of the terms hereof, unless such document is signed by buyer as consenting to such change. Payment of any invoice, the terms of which differ from or contradict the terms hereof, shall not constitute waiver of any of the buyer’s rights, hereunder, or acceptance of the terms of said invoice * * *
"9. Any disputes between the parties hereto shall be resolved by arbitration before the American Arbitration Association or in the courts of the State of New York as the buyer shall elect.”
On the following day, January 30, 1974, Allen confirmed the order by its "finished goods contract order” form "contract number 03259” describing the same goods and specifically referring to "Buyer’s Order No. 002710”. Allen’s form provided in pertinent part:
"1. contract acknowledgement: This contract embodying the terms on the face and reverse side hereof confirms the agreement to buy and sell the goods herein described and is hereby acknowledged by the parties to be correct. It shall become binding and enforceable against the Buyer either (a) when signed or accepted in writing by the Buyer or its agent or broker, or (b) when signed and delivered by the Seller to the Buyer unless the Buyer gives the Seller written” notice of objection to its contents within five days after receipt hereof; or (c) when Buyer has paid for or accepted delivery of the whole or any part of the goods herein described.
"The terms hereof shall control regardless of whether or when the Buyer has submitted or sent its own manifold or purchase order. No modification of this contract shall become effective unless in writing signed by the parties.
* * *
"2. arbitration: Any controversy or claim arising out of or relating to this contract, any interpretation thereof or breach thereof, shall be settled by arbitration in the City of New York before the American Arbitration Association under the Rules of the General Arbitration Council of the Textile Industry then obtaining. The parties consent to the jurisdiction of the Supreme Court of the State of New York, or any other court of proper jurisdiction, for all purposes including enforce *1093 ment of the arbitration agreement and proceedings and entry of any judgment or any award, and further consent that any process or notice of motion may be served either personally or by mail outside the State of New York, provided a reasonable time for appearance is allowed.”
Thus the parties became engaged in their version of the "battle of the forms” about which so much has been written. Not to be outdone, Tunis fired what it regarded as the final and decisive salvo in the battle. Following what its witnesses described as its standard practice, Tunis returned one copy of Allen’s form, after stamping on its face, the following legend:
"this form returned and rejected our ORDER #2710 IS ONLY AGREEMENT IN EFFECT.
TUNIS MFG. CORP.”
Allen denies receipt of its form with such legend affixed. It introduced evidence respecting similar transactions with Tunis, showing that no such legend had been placed on Allen’s form by Tunis, with respect to those transactions. Contrary to Allen’s contention, the evidence with respect to this transaction established that Tunis did return Allen’s form with the legend affixed. However, this is not dispositive.
It is undisputed that some, if not all of the goods ordered were shipped and received. The underlying dispute between the parties is whether all of the goods were shipped and as to the timeliness of the shipment. The issue here is whether the dispute is required to be resolved by arbitration, as Allen contends, or in the courts, as Tunis urges.
The Tunis "purchase order” which originated the transaction gave Tunis the option as to whether resolution of disputes was to be by arbitration or in the courts. The Allen "finished goods contract order” required determination of disputes by arbitration. The Tunis form in substance states it is the only agreement between the parties and that no notice or legend on any seller’s document may contradict the Tunis terms unless signed by Tunis. It is undisputed that there is no such signature by Tunis.
In substance Allen’s form is to the same effect, giving conclusive effect to its terms, irrespective of anything in any buyer’s document. Only a writing signed by Allen could vary its terms.
"In short, the buyer and seller accomplished a legal equiva *1094 lent to the irresistible force colliding with the immovable object.” (Matter of Doughboy Ind. [Pantasote Co.], 17 AD2d 216, 217.)
As in that case, there is no question here whether the parties entered into a contract, but only what was the contract. In that case and here there was agreement as to quantity and price and there was shipment and acceptance of goods. The essential difference between the forms is whether disputes are required to be arbitrated. As to this there was no agreement between the parties. In Doughboy (supra), a pre-Uniform Commercial Code case, this was held to be dispositive, on the principle that an "agreement to arbitrate must be direct and the intention made clear, without implication, inveiglement or subtlety”. (Matter of Doughboy, supra, pp 218-219.) In the face of the conflict no agreement to arbitrate could be found. As Doughboy suggests, the result is the same under section 2-207 of the Uniform Commercial Code, which provides:
"§ 2-207. Additional Terms in Acceptance or Confirmation.
"(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.
"(2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:
"(a) the offer expressly limits acceptance to the terms of the offer;
"(b) they materially alter it; or
"(c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.
"(3) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this Act.”
The Tunis purchase order was an offer which expressly gave *1095 only Tunis the option of determining whether disputes were to be resolved by arbitration. Although it is doubtful that either party could be compelled to arbitrate under such a nonbinding provision (Hull Dye & Print Works v Riegel Textile, 37 AD2d 946; Matter of Kaye Knitting Mills [Prime Yarn Co.], 37 AD2d 951), this is immaterial, since Tunis does not seek arbitration. And Allen relies on its "finished goods contract order” form which might be construed as a "confirmation” operating as an "acceptance” even though its provisions mandated arbitration. (Uniform Commercial Code, § 2-207, subd [1].) However, the Allen form conditioned the contract on assent to all of its terms as did the Tunis form. Thus the additional terms of the Allen proposal requiring arbitration could not be deemed a part of the contract. The Tunis offer expressly limited acceptance to its terms, which the Allen acceptance materially altered. (Uniform Commercial Code, § 2-207, subd [2], pars [a], [b].) Tunis could not be required to arbitrate under such circumstances. (Matter of Tunis Mfg. Corp. [Mystic Mills], 40 AD2d 664.)
As noted, the conduct of the parties recognized the existence of a contract of sale, despite the conflict between the forms. The contract consists of the terms expressly agreed to and on which the purchase order and the confirmation agree. (Uniform Commercial Code, § 2-207, subd [3].) Since there was a clear conflict as to whether arbitration was mandated and each form asserted its terms were controlling there was no need for the additional notice contained in the Tunis legend. The notice requirements of section 2-207 (subd [2], par [c]) of the Uniform Commercial Code were satisfied by the conflict on the face of the respective documents. There was no agreement to arbitrate.
Accordingly, after trial, petitioner is entitled to judgment permanently staying arbitration.