Gabrielli, J.
(concurring). I concur in result, but am unable to join in the majority opinion because of the erroneous suggestion contained therein, in dicta, that a court may impose an agreement to arbitrate upon the parties to a contract, despite the absence of any express agreement, solely on the basis of past dealings or a trade custom. I consider such a rule to be an abrupt departure from prior settled law in this State, and am especially disturbed by the fact that the majority has apparently chosen to adopt this principle without any expressed justification.
Petitioner Schubtex, Inc. (Schubtex), appeals to this court, pursuant to leave granted by the Appellate Division, from an order of that court which affirmed a judgment of Supreme Court vacating a stay of arbitration. The order of the Appellate Division should be reversed, for there exists no agreement to arbitrate this dispute.
The controversy between these parties is based on an alleged breach by Schubtex of a contract to purchase fabrics from respondent Allen Snyder, Inc. (Snyder). Schubtex initiated the transaction by placing an oral order for fabrics with Snyder. Subsequently, Snyder mailed Schubtex a printed "confirmation of order” form containing an arbitration agreement. Schubtex simply retained that form and neither objected to its contents nor signed it. At no time did the parties discuss the inclusion of an arbitration agreement. When Schubtex subsequently refused to accept certain fabrics, Snyder sought to arbitrate the dispute. Schubtex then commenced this proceeding seeking to stay the arbitration, on the ground there was no agreement to arbitrate.
Upon the trial of this issue, Snyder presented evidence of several similar prior transactions between it and Schubtex. In each of those transactions, as here, Schubtex had verbally *8 placed an order, Snyder had sent Schubtex a form containing an arbitration provision, and Schubtex had retained that form in silence. It was Snyder’s contention that by failing to object to the arbitration clause contained in the form in this instance, and in light of the prior course of dealings between the parties, this contract should be deemed to include an agreement to arbitrate. Supreme Court appears to have adopted this analysis, concluding in an oral decision that "on the basis of the history of their relationships with the respondent, the petitioners were fully aware of the arbitration clause. They adopted it, accepted it and undertook to be bound by it with the full knowledge of its provisions and with full knowledge of the obligations which it entailed”. The Appellate Division affirmed the judgment of Supreme Court without opinion, and petitioner appeals to this court by permission of the Appellate Division.
The majority of this court has concluded that there must be a reversal because there is no evidence to support a finding either that the parties had entered into a consistent course of past dealings including the use of arbitration as their normal method of dispute resolution, or that arbitration is so prevalent in the textile industry as to constitute a trade usage. I agree that such evidence was lacking, but deem that largely irrelevant, since I strongly disagree with the majority’s suggestion that the existence of an arbitration agreement could "in a proper case be implied from a course of past conduct or the custom and practice in the industry” (p 6) despite the absence of an express agreement to arbitrate.
In Matter of Marlene Inds. Corp. (Carnac Textiles) (45 NY2d 327) we concluded that the inclusion of an arbitration clause in a contract constitutes a material alteration of that contract as a matter of law. Accordingly, we there held that an arbitration clause is not made a part of a contract simply by the retention without objection by one party to that contract of an unsigned and unaccepted form, sent it by the other party, which contains an arbitration clause (see Uniform Commercial Code, § 2-207). Applying Marlene to the instant case, it is evident that this contract must be deemed to contain no arbitration clause unless Snyder has been able to prove the existence of such an agreement by sufficient evidence independent of the form itself.[1]
*9 The conclusion reached by the courts below is premised upon the belief, apparently accepted by the majority of this court today, that an arbitration clause may be incorporated into a contract simply because arbitration may be the prevalent means of resolving disputes in an industry and has in fact been provided for by the parties in prior agreements, despite the absence of any express agreement to arbitrate disputes arising from the object contract. Unfortunately, this approach to determining the existence of an agreement to arbitrate runs counter to the settled law of this State.
It is true, of course, that evidence of a trade usage or of a prior course of dealings may normally be utilized to supplement the express terms of a contract for the sale of goods (Uniform Commercial Code, § 2-202, subd [a]; see, also, § 1-205). General rules of contract law, however, are not always applicable to arbitration clauses because of overriding policy considerations. A purported agreement to arbitrate is severable from the other provisions of a contract (Matter of Weinrott [Carp], 32 NY2d 190, 198), and it has long been true, if it were ever in doubt, that "the threshold for clarity of agreement to arbitrate is greater than with respect to other contractual terms” (Matter of Doughboy Inds. [Pantasote Co.], 17 AD2d 216, 219 [Breitel, J.]). There obviously exists good reason to proceed cautiously in determining whether a particular contract contains an arbitration agreement. As we stated in Matter of Marlene Inds. Corp. (Carnac Textiles), (45 NY2d, at pp 333-334, supra):
"It has long been the rule in this State that the parties to a commercial transaction 'will not be held to have chosen arbitration as the forum for the resolution of their disputes in the absence of an express, unequivocal agreement to that effect; absent such- an explicit commitment neither party may be compelled to arbitrate’ (Matter of Acting Supt. of Schools of Liverpool Cent. School Dist. [United Liverpool Faculty Assn.], 42 NY2d 509, 512; accord Gangel v De Groot, 41 NY2d 840, 841; Matter of Riverdale Fabrics Corp. [Tillinghast-Stiles Co.], 306 NY 288, 289; Matter of Lehman v Ostrovsky, 264 NY 130, *10 132). The reason for this requirement, quite simply, is that by agreeing to arbitrate a party waives in large part many of his normal rights under the procedural and substantive law of the State, and it would be unfair to infer such a significant waiver on the basis of anything less than a clear indication of intent (see Matter of Riverdale Fabrics Corp. [Tillinghast-Stiles Co.] supra, p 289; Siegel, New York Practice, § 588, p 835).
"Since an arbitration agreement in the context of a commercial transaction 'must be clear and direct, and must not depend upon implication, inveiglement or subtlety * * * [its] existence * * * should not depend solely upon the conflicting fine print of commercial forms which cross one another but never meet’ (Matter of Doughboy Inds. [Pantasote Co.], 17 AD2d 216, 220). Thus, at least under this so-called 'New York Rule’ (Squillante, General Provisions, Sales, Bulk Transfers and Documents of Title, 33 Business Law 1875, 1881), it is clear that an arbitration clause is a material addition which can become part of a contract only if it is expressly assented to by both parties (see Matter of Doughboy Inds. [Pantasote Co.] supra; accord Frances Hosiery Mills v Burlington Inds., 285 NC 344; see, also, Duesenberg, General Provisions, Sales, Bulk Transfers, and Documents of Title, 30 Business Law 847, 853).”
It may be argued, that our decision in Marlene does not entirely and specifically control the instant case. In Marlene, we determined that the inclusion of an arbitration clause in a contract constitutes a material alteration of that contract as a matter of law. We were not then directly faced with the issue of the nature and quality of evidence necessary to prove the existence of an agreement to arbitrate. However, the rationale upon which a court rests its holding is as much a part of the law as the specific holding itself, and the same reasons which mandated the result reached in Marlene are equally applicable to this case.[2] Our decision in Marlene was premised upon what we recognized to be the requirement imposed by New York law that an agreement to arbitrate can be found to exist *11 only where there is an "express, unequivocal agreement” and “an explicit commitment” to submit disputes to the arbitral forum. In light of this plain statement of policy, it makes little sense to now hold that the existence of such an agreement may be proven solely upon the basis of trade usage and prior dealings. Such evidence is used to incorporate into contracts certain provisions which the parties have failed to expressly include, but which the law assumes they would have included had they considered the matter. Where there exists good reason to require an explicit agreement, however, it would seem most imprudent to allow a presumption of intent to supplant the need for such an agreement.
This is especially true since there exists no prior decision by this court impelling such a result. In Matter of Acadia Co. (Edlitz) (7 NY2d 348), we held only that an arbitration clause contained in a written contract continues in existence when the parties orally agree to renew the written agreement. Since we were there concerned with the renewal of an existing contract containing a valid arbitration agreement, our decision in Acadia Co. is not relevant to the instant dispute. Similarly, Matter of Helen Whiting, Inc. (Trojan Textile Corp.) (307 NY 360) provides no guidance in resolving this case, for there we held only that a written arbitration agreement need not be signed if there exists sufficient proof that the parties actually agreed to submit their disputes to arbitration. We have never held that the existence of an arbitration clause may be implied in the absence of proof of an express agreement, and I cannot concur in the majority’s decision to adopt such a rule today.
This is not to say, of course, that evidence of a trade usage or a prior course of dealings is irrelevant in determining whether the parties have agreed to submit their dispute to arbitration. For example, if there exists conflicting testimony as to whether the parties did in fact enter into an explicit agreement to arbitrate, evidence of the customs of the industry and the prior dealings of the parties might well be relevant in assessing that testimony. Such evidence alone, however, does not serve to prove the existence of an arbitration agreement where there simply exists no evidence or claim that an express agreement to arbitrate was in fact entered into.
Since the record in this case contains no evidence of an express agreement to arbitrate, I would reverse the order *12 appealed from and grant a stay of arbitration on that ground alone.
Judges Jones, Fuchsberg and Meyer concur with Judge Jasen; Judge Gabrielli concurs in result in a separate opinion in which Chief Judge Cooke and Judge Wachtler concur.
Order reversed, etc.

. An agreement to arbitrate is enforceable only if it is in writing (CPLR 7501), *9 although that writing need not be signed as long as it does embody the agreement between the parties (Crawford v Merrill Lynch, Pierce, Fenner & Smith, 35 NY2d 291, 299). Since I would hold that there exists no arbitration agreement between these parties, I express no opinion as to whether a unilateral form not accepted by the other party may serve as the necessary writing (cf. Uniform Commercial Code, § 2-201, subd [2]).

. It should be noted that the determinations in this case by both Supreme Court and the Appellate Division were made prior to our decision in Matter of Marlene Lids. Corp. (Carnac Textiles) (45 NY2d 327, supra). Since our decision in Marlene Mr. Justice Nathaniel T. Helman, the author of the decision in the instant case at Trial Term, has reached the opposite result in light of Marlene in a case involving facts similar to those in this case (Matter of Kayser-Roth Corp. [Gould Fabrics], Supreme Ct, New York County, April 10, 1979).