■     In the Matter of the Arbitration between CHAS. A. STEVENS CO., Appellant, and ULTRACASHMERE HOUSE, LTD., Respondent. In the Matter of the Arbitration between LEVY's, Doing Business as LEVY-WOLF, Appellant, and ULTRACASHMERE HOUSE, LTD., Respondent.—Judgments of the Supreme Court, New York County, both entered May 5, 1980, which dismissed petitions to stay arbitration, affirmed, with costs. Orders of the Supreme Court, New York County, both entered July 28, 1980, which denied motions which in effect sought reargument, are dismissed as nonappealable, without costs. The facts in these two cases are substantially identical. In each case respondent sold to petitioner certain merchandise. The sales documents, signed by a representative of petitioners, contained at the bottom thereof the following provision: "Notwithstanding anything herein to the contrary, the rights and obligations of buyer and seller hereunder are defined by, and shall be subject to the Basic Trade Provisions now approved and promulgated as of January 15, 1948 by the National Retail Dry Goods Association and the Apparel Industries Inter-Association Committee, including the provision that all disputes or differences arising between the parties shall be settled by arbitration which may be initiated and conducted and award therein confirmed in the manner described in such provisions and upon service of process accordingly". Although the minority refers to the provision as "barely legible to the naked eye" no such claim is made by petitioners. They assert merely that the paragraph is set forth "in fine print". They base their opposition to arbitration upon grounds which both we and the minority find untenable. We find, as did Special Term, that petitioners, by signing the sales documents through an authorized representative, assented to the terms and conditions contained in those documents and that one of those terms and conditions was that "all disputes or differences arising between the parties shall be settled by arbitration". We further find, and this is not disputed by petitioners, that the arbitration provision, although set forth in fine print, was legible and readily readable by anyone intent on ascertaining the terms of the documents. Concur—Ross, J. P., Markewich and Bloom, JJ.

Silverman and Carro, JJ., dissent in a memorandum by Carro, J., as follows: We would dissent and grant a stay of arbitration with respect to each of these actions, where common issues of law and fact are involved. Examination of the records in the cases reveals that the underlying facts in each one are essentially the same, except for the names of petitioners' buyers. A stay of arbitration was sought on the grounds that a valid agreement to arbitrate was never entered into. The arbitration provisions are located at the bottom of an order form and appear in small fine print, barely legible to the naked eye. The provision reads as follows: "Notwithstanding anything herein to the contrary, the rights and obligations of buyer and seller shall be subject to the Basic Trade Provisions now approved and promulgated as of January 15, 1948 by the National Retail Dry Goods Association and the Apparel Industries Inter-Association Committee, including the provision that all disputes or diferences [sic] arising between the parties shall be settled by arbitration which may be initiated and conducted and any award therein confirmed in the manner described in such provisions and upon service of

process accordingly." The forms were signed by the petitioners' buyers. Petitioners argued that no discussions were had between these buyers and respondents' representatives concerning arbitration. The facts are not indispute, the only issue being whether under these circumstances the parties having signed the order form are bound by the provisions thereof. It has long been the rule in this State that parties to a commercial transaction "will not be held to have chosen arbitration as a forum for the resolution of their disputes in the absence of an express, unequivocal agreement to that effect; absent such an explicit commitment neither party may be compelled to arbitrate" *(Matter of Riverdale Fabrics Corp. [Tillinghast-Stiles Co.], 306 NY 288, 289)*. The reason for this requirement, quite simply, is that by agreeing to arbitrate, a party waives in large part many of his normal rights under the procedural and substantive laws of the State, and it would be unfair to infer such a significant waiver on the basis of anything less than a clear indication of intent. An arbitration agreement in the context of a commercial transaction "must be clear and direct, and must not depend upon implication, inveiglement or subtlety * * * [its] existence * * * should not depend solely upon the conflicting fine print of commercial forms which cross one another but never meet" *(Matter of Doughboy Inds. [Pantasote Co.], 17 AD2d 216, 220, quoted with approval in Matter of Marlene Inds. Corp. [Carnac Textiles], 45 NY2d 327, 334)*. The arbitration clause herein, in rather miniscule fine print, while legible and not conflicting, is not the type of clear, direct notice that one would expect to be binding on the parties thereto. Important clauses such as the one here in issue should be highlighted in bolder type, as in exclusion clauses in insurance contracts and motor vehicle cancellation notices, to alert the signers. Parties should not be held to have relinquished such a fundamental and important right on this type of notice. Having reached this conclusion we see no need to address petitioners' other arguments. Accordingly, the order dismissing the petition to arbitrate in both of these cases should be reversed, and judgment should be granted to petitioner.