In the Matter of INTERCONTINENTAL PACKAGING COMPANY, Respondent, v CHINA NATIONAL CEREALS, OILS & FOODSTUFFS IMPORT & EXPORT CORPORATION, SHANGHAI FOODSTUFFS BRANCH, Appellant.

First Department, July 19, 1990

**APPEARANCES OF COUNSEL**

*Louis S. Ederer* of counsel *(Marcy G. Stuzin* with him on the brief; *Buchman & O'Brien,* attorneys), for respondent.

*Thomas E. Berinato* of counsel *(Fu-Cheng Chin,* attorney), for appellant.

**OPINION OF THE COURT**

SMITH, J.

This action to compel arbitration requires the interpretation of several agreements between petitioner, one of its subsidiaries and respondent for the purchase of beer from the People's Republic of China.

Petitioner Intercontinental Packaging Company (Intercontinental) is a Minnesota corporation which imports alcoholic beverages and distributes them through licensed distributors in the United States. One of Intercontinental's subsidiaries is Johnson Brothers Wholesale Liquor Co. (Johnson Brothers).

Respondent China National Cereals, Oils & Foodstuffs Import & Export Corporation, Shanghai Foodstuffs Branch (China National) is a corporation organized under the laws of the Peoples Republic of China which manufacturers 'S.B' Shanghai Beer.

By contract dated April 5, 1986, China National agreed to sell 27,900 cartons of 'S.B' Shanghai Beer to Johnson Brothers for $205,902. The contract is a form printed by China National. Typewritten language provides that this "contract is subject to the [joint] signature of the agency agreement on

'S.B' Shanghai Beer to be prepared by Johnson Brothers." Printed language in the contract provides that in the event that the parties are unable to amicably settle disputes arising under the contract, the "dispute shall be submitted to arbitration, which shall be held in the country where the defendant resides." This contract was purportedly signed on behalf of Johnson Brothers by Paul Berkowitz, one of its brokers. Berkowitz contends that his signature was forged.

Nonetheless, Intercontinental concedes that the contract was ratified by it when, under cover letter dated April 10, 1986, Douglas Mangini, Intercontinental's vice-president, submitted to China National an "ADDENDUM to [the] Contract dated April 5, 1986, between China National * * * and Johnson Brothers". The addendum states that it modifies the contract insofar as the "identity of [the] Buyer is and shall be Intercontinental * * * and not Johnson Brothers". The addendum, which is signed by Mitchell Johnson, president of Intercontinental, further provides for discounting the price per carton, with the discount to be used for promotional purposes, and refers to the Buyer having the sole right to use the name "Shanghai" in the United States for beer or other malt beverages manufactured by the Republic of China.

Thereafter, the parties executed a May 1, 1986 agreement, drafted by Intercontinental's counsels, by which Intercontinental was appointed exclusive wholesale distributor of 'S.B.' Shanghai Beer in the United States for a 2½-year term commencing July 1, 1986. The discount provisions of the addendum were restated in this agreement. With respect to the settlement of disputes the agreement states: "7. <u>Arbitration</u> Both parties recognize that Computer Systems & Technology, Inc. * * * East Farmingdale, New York * * * has acted as their mutual agent in reaching this agreement, and, in the event of any disagreement over the terms or performance of this agreement, the parties agree to notify [said] Corporation and, in good faith, attempt to reach an understanding. *In the event of a dispute which cannot be resolved in that way, the parties agree to submit the same to binding arbitration pursuant to the laws of the State of New York, U.S.A."* (emphasis supplied).

This agreement was thereafter modified to extend Intercontinental's exclusive agency to a period of five years.

Thereafter, a dispute arose regarding allegedly defective

beer sold by China National which could not be resolved at a meeting held in New York City at the offices of Intercontinental's attorneys. Intercontinental served a notice of intention to arbitrate on China National and Computer Systems & Technology, Inc. (Computer Systems), their mutual agent, and petitioned the Supreme Court, pursuant to CPLR 7503, by order to show cause dated July 15, 1988, to compel arbitration. China National cross-moved to stay arbitration and to dismiss on jurisdictional grounds. The basis of this cross motion was paragraph 7 of the April 5, 1986 contract which provided that "arbitration * * * shall be held in the country where the defendant resides" (China).

Upon the papers submitted, the IAS court directed the parties to proceed to arbitration in New York and appointed an arbitrator, after concluding that the May 1, 1986 agreement superseded the April 5, 1986 contract and that the laws of the State of New York are better applied by a New York tribunal. The instant appeal by China National followed. Following this court's denial of a stay (order entered June 8, 1989), arbitration was held at which testimony was received. A decision has been made by the arbitrator.

As previously mentioned, Intercontinental ratified the April 5 contract between its subsidiary Johnson Brothers and China National and is therefore bound by its provisions, including those related to the locus of arbitration. (UCC § 2-210 [4]; *Matter of S & L Vending Corp. v 52 Thompkins Ave. Rest.,* 26 AD2d 935 [2d Dept 1966] [assignee of a contract may avail itself of arbitration clause contained therein]; *Matter of Vann v Kreindler, Relkin & Goldberg,* 78 AD2d 255 [1st Dept 1980], *affd* 54 NY2d 936 [1981] [predecessor law firm demonstrated by its actions intent to be bound by arbitration provision of agreement]; *Matter of Stevens Co. [Ultracashmere House],* 79 AD2d 545 [1st Dept 1980] [party assented to arbitration terms of agreement signed by its authorized representative].)

The April 5, 1986 contract between China National and Johnson Brothers specifically contemplated that it would be subject to a subsequent "agency agreement". Thus, the contract was not intended as the exclusive statement of agreement. *(In re Grant Co.,* 1 Bankr 516 [SD NY 1979]; *Ciunci v Wella Corp.,* 26 AD2d 109 [1st Dept 1966].) The May 1st "Agreement", therefore, did not supersede the April 5 contract but, rather, supplemented it. In providing for the terms of the exclusive agency, as contemplated by the April 5 contract, the agreement states:

"2. *Duties* Seller * * * guarantees that [beer] will constitute fresh and high quality merchandise, in compliance with all * * * requirements of the United States * * * for the Importation of such merchandise. Buyer will use its best reasonable efforts to create an active market * * *.

"3. *Terms of Purchase and Sale* Each carton * * * will contain 24 bottles of 335 ML, priced at US $7.38 per carton CIF west coast and US $7.58 per carton CIF east coast. * * * [S]aid price per carton shall be discounted by 20% * * * to defray [Buyer's] promotional expenses * * *.

"4. *Planning* * * * [T]he parties will attempt to schedule for 1987's ordering quantities and shipment * * * on or before November 30, 1986 * * *.

"5. *Protection of Name* * * * Buyer * * * has the sole right to use the trade name 'Shanghai' * * *.

"6. *Renewal of Agreement* The parties agree * * * [to] review this agreement and its performance * * * each year * * * with a view toward * * * renewal * * * for an additional two and one-half (2½) year[s]. * * * [I]f Buyer fails to open letter of credit six months successively, Seller has the right to make offers for Shanghai Beer to their importer in the U.S.A.

"7. *Arbitration* Both parties recognize that Computer Systems & Technology, Inc., 226 Sherwood Avenue, East Farmingdale, New York 11735, U.S.A., has acted as their mutual agent in reaching this agreement, and, in the event of any disagreement over the terms or performance of this agreement, the parties agree to notify siad *[sic]* Corporation and, in good faith, attempt to reach an understanding. In the event of a dispute which cannot be resolved in that way, the parties agree to submit the same to binding arbitration pursuant to the laws of the state of New York, U.S.A."

This agreement does not vary the quantity, unit price, dates and ports of shipment, or terms of payment provided in the April 5 contract. Nor does the agreement address several matters included in the contract, such as risk of loss, custom duties, insurance, the notice required for the rejection of defective goods and the country in which arbitration of disputes is to be held.

■ The May 1st writing gives no indication whatsoever of any intent to supersede the April 5th contract. Moreover, the arbitration terms contained in both writings on their face are not inconsistent. Nothing precludes the application of New

York law by an arbitrator or court in Shanghai, China. *(See, Oil Basins v Broken Hill Proprietary Co.,* 613 F Supp 483 [SD NY 1985].)* When, as here, the subsequent writing can be construed in harmony with the original contract, there is no need to alter the original. (UCC § 2-202; *Searle & Co. v Metric Constructors,* 572 F Supp 836, 840 [ND Ga 1983] [second agreement, dealing exclusively with interim payment, additional and changed work orders and giving no implication of an intent to supersede the original contract, was to be construed in harmony with the original].)

Arbitration is a creature of contract. Where parties have agreed upon a forum for resolution of controversy, courts should not rewrite their agreement. *(Matter of Stewart Tenants Corp. [Diesel Constr. Co.],* 16 AD2d 895, 896 [1st Dept 1962]; *Matter of Symphony Fabrics Corp. [Bernson Silk Mills],* 16 AD2d 473, 474 [1st Dept 1962], *affd* 12 NY2d 409 [1963].) Here, the contractual provisions, taken together, specify the forum and law to be applied in settling disputes. *(Compare, Ciunci v Wella Corp.,* 26 AD2d 109 [1st Dept 1966], *supra* [ambiguous and incomplete agreement subject to explanation by parol evidence].)

In *Scherk v Alberto-Culver Co.* (417 US 506, 516 [1974], *reh denied* 419 US 885, *disapproved on other grounds in Shearson/ American Express v McMahon,* 482 US 220 [1987]), an American manufacturer contracted with a German national for the purchase of three foreign enterprises and trademarks. The sales contract, executed in Switzerland and Austria, provided for arbitration of any claimed breach before the International Chamber of Commerce in France and that Illinois law would govern. The American company brought suit in the United States District Court for damages after discovering that the trademarks were subject to substantial encumbrances in violation of section 10 (b) of the Securities Exchange Act of 1934. The Supreme Court held that the arbitration clause of the contract was to be respected in accordance with the explicit provisions of the United States Arbitration Act (9 USC §§ 1, 2), stating:

"A contractual provision specifying in advance the forum in which disputes shall be litigated and the law to be applied is * * * an almost indispensable precondition to achievement of the orderliness and predictability essential to any international business transaction. Furthermore, such a provision obviates the danger that a dispute under the agreement might

be submitted to a forum hostile to the interests of one of the parties or unfamiliar with the problem area involved.

"A parochial refusal by the courts of one country to enforce an international arbitration agreement would not only frustrate these purposes, but would invite unseemly and mutually destructive jockeying by the parties to secure tactical litigation advantages." (417 US, at 516-517.)

While a court may dismiss or grant a petition to compel arbitration on the grounds of forum non conveniens, this power is restricted where a contract expressly designates the forum for arbitration. *(Oil Basins v Broken Hill Proprietary Co., supra,* 613 F Supp, at 489 [SD NY 1985], citing *Matter of Maria Victoria Naviera v Cementos del Valle,* 759 F2d 1027, 1031 [2d Cir 1985].)

■ Numerous factors support the IAS court's conclusion that New York is the more convenient forum—New York law is to be applied, the contract was executed in New York, attempts at resolution were made through the efforts of the parties' mutual agent in New York, the allegedly defective beer was distributed in the United States and evidence of Intercontinental's damages is likely to be proven by witnesses in this country. Nonetheless, the intent of the parties, as expressed by the clear language of the writings, is to be given effect.

■ We reject China National's contention that the IAS court lacked personal jurisdiction over it. The parties designated Computer Systems & Technology, Inc. of East Farmingdale, New York, as its mutual agent in New York, the contract was signed in New York and China National's beer was to be distributed in New York. (CPLR 301, 302 [a].)

Finally, we note that arbitration before a New York tribunal has been completed, although an award has not been confirmed (CPLR 7510) and judgment entered thereon (CPLR 7514). Thus, the question of whether arbitration should proceed in the People's Republic of China will be moot, unless there exists some basis for vacating any award of the New York tribunal. (CPLR 7511; *see, Rembrandt Indus. v Hodges Intl.,* 38 NY2d 502, 504 [1976] [the doctrine of res judicata is applicable to issues resolved by earlier arbitration]; *Matter of David Assocs. [Bevona],* 109 AD2d 623, 624 [1st Dept 1985] [res judicata bars subsequent arbitration of issues resolved by earlier arbitration]; *Yeargin Constr. Co. v Parsons & Whittemore Ala. Mach. & Servs. Corp.,* 609 F2d 829, 831 [5th Cir

1980] [appeal from denial of stay moot where arbitration was completed and an award entered].)

Order of Supreme Court, New York County (Shirley Fingerhood, J.), entered April 7, 1989, *inter alia,* granting petitioner's motion pursuant to CPLR 7503 (a) compelling arbitration in New York and appointing an arbitrator, and denying respondent's cross motion for a stay of arbitration should be modified, on the law and the facts, to the extent of vacating so much of the order as directs that there be an arbitration in the City of New York and appoints an arbitrator for such purpose and without prejudice to a further application pursuant to CPLR article 75 for the appointment of an arbitrator and further proceedings in conformity herewith, including arbitration proceedings in China, and otherwise affirmed, without costs.

MURPHY, P. J., ROSS, ROSENBERGER and KASSAL, JJ., concur.

Order, Supreme Court, New York County, entered on April 7, 1989, unanimously modified, on the law and the facts, to the extent of vacating so much of the order as directs that there be an arbitration in the City of New York and appoints an arbitrator for such purpose and without prejudice to a further application pursuant to CPLR article 75 for the appointment of an arbitrator and further proceedings in conformity with the opinion herein including arbitration proceedings in China, and otherwise affirmed, without costs and without disbursements.