*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

THE DOW CHEMICAL COMPANY,

        Plaintiff-Appellee,

v

AURIA SOLUTIONS USA, INC.,

        Defendant-Appellant.

UNPUBLISHED
September 14, 2023

No. 360102
Oakland Circuit Court
LC No. 2021-189923-CB

Before: PATEL, P.J., and SWARTZLE and HOOD, JJ.

PER CURIAM.

Defendant, Auria Solutions USA, Inc. (Auria Solutions), appeals as of right the trial court order granting the motion for entry of judgment and final order of dismissal filed by plaintiff, The Dow Chemical Company (Dow). We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

This case originates from a commercial relationship between Dow and Auria Solutions and revolves around which terms and conditions govern that relationship. There is, however, a question of the proper parties to that relationship. Dow is a company that produces chemicals for use in a variety of industries. This includes a resin called Engage DA 53 (Engage) that is used, at least here, in the automotive sector. Auria Solutions, along with its affiliates, including Auria Sidney, LLC (Auria Sidney), is a Tier-1 supplier for the automotive industry. Auria Sidney received Engage pellets from Dow, and processed the pellets into vinyl sheets that are used in the production of vinyl flooring. This production occurred at a plant in Sidney, Ohio. Before September 2017, Auria Sidney was called IAC Sidney, LLC, and was part of a separate company, International Automotive Components Group North America, Inc. (IAC). In September 2017, however, it spun off from IAC and became Auria Sidney.

According to Auria Solutions, Auria Sidney is the "actual party" to the contract with Dow. Auria Solutions asserted below that Auria Sidney issued the relevant purchase orders to Dow and received deliveries of Engage from Dow, which it then incorporated in its products. Dow, on the

-1-

other hand, argued it did not have a contract with Auria Sidney, only Auria Solutions. Dow identified documents that it claims establish its agreement was with Auria Solutions.

Auria Solutions has purchased Engage from Dow since 2014, according to Lawrence Collier, a technical account manager with Dow responsible for managing Dow's relationship with Auria Solutions. The parties dispute the purchasing process. According to Dow, Auria Solutions sent Dow a "forecast" of its projected needs over the span of six months, though the projections frequently changed week-to-week. Collier indicated that the forecasts from Auria Solutions did not include terms and conditions. Once Dow received a forecast (or any changes to one), it sent Auria Solutions an order acknowledgement form and invoice. Both the order acknowledgement and invoice contained nearly identical terms and conditions under which Dow agreed to do business. Auria Solutions asserts that, before it issued the forecasts, it also issued purchase orders that broadly covered the parties' relationship and effectively served as a requirements contract.

According to Auria Solutions, in early August 2017, IAC issued purchase order 1291096 (the 2017 purchase order) to Dow for Engage. The 2017 purchase order included a "Bill To Address" referencing a post office box for IAC Sidney, LLC in Plymouth, Michigan, and a "Ship To Address" and "Mfg Location" both referencing "IAC Sidney, LLC, 2000 Schlater Drive, Sidney, Ohio 45365." Dow disputes the relevance of the 2017 purchase order. The purchase order stated:

> Supplier agrees that it will sell to IAC and IAC agrees to buy all of IAC's requirements for products covered by this Purchase Order or Purchase Order Amendment from the Issue Date through 2022-12-31 at the prices indicated on this Purchase Order or Purchase Order Amendment in accordance with the firm quantities and delivery schedules specified in releases.

Regarding terms and conditions, the 2017 purchase order stated:

> This purchase order, purchase order amendment or purchase order requisition incorporates by reference the International Automotive Components Group North America, Inc., ("IAC") Purchase Order Terms and Conditions which are available through links provided on the IAC Web Site at WWW.IACGROUP.COM (THE "TERMS"). The Terms apply to all purchase by IAC and its affiliates under any purchase order, purchase order amendment or purchase requisition.

Both pages of the 2017 purchase order also indicate they are governed by the IAC terms and conditions. Victor Gonzales, a "buyer" with Auria Solutions, indicated that Dow supplied Engage to Auria Sidney under the 2017 purchase order "for years" based on Auria Sidney's forecasts. Gonzales also indicated that when Auria Sidney spun off from IAC in 2017, "Auria and its affiliates adopted" IAC's terms and conditions, renamed them the Auria Solutions terms and conditions, and incorporated them into their purchase orders.

In 2019, Auria Solutions procurement director Kevin Whitaker and Dow account executive Jeffrey Wolok attempted to negotiate a long-term supply agreement for Engage, which would have included agreed-upon terms and conditions. The negotiations failed to result in agreement.

According to Collier, Auria Solutions "remained a spot customer" and Dow refused to agree to Auria Solutions' terms and conditions.

In early July 2020, Auria Sidney generated a new purchase order: purchase order AU41730 (the 2020 purchase order). Dow did not receive the 2020 purchase order until late August 2020. An analyst with Auria Solutions, Julie Johnson, emailed Dow customer-service specialist Joshua Bennett about the newly-generated purchase order in mid-August 2020 and indicated she would send him a copy of the order approximately a week later. Her email indicated that the purchase order had an order number of SI041730 and a corporate purchase-order number of AU041730. Johnson never forwarded a copy of the purchase order to Dow. Instead, according to Collier, she "continued to provide Dow a new [f]orecast each week." On the day she said she would send a copy of the 2020 purchase order, Johnson instead sent a forecast referencing the new purchase-order number, SI041730. Neither Johnson's emails, nor the forecast, refer to any terms and conditions.

In response to the mid-August 2020 forecast, Dow sent Auria Solutions an order-acknowledgement form, which included Dow's terms and conditions. Auria Solutions disputes that Dow sent the order acknowledgement, asserting it was sent to email addresses associated with IAC, not Auria Solutions, as well as to an employee no longer working for Auria Sidney. According to Collier, Dow emailed Auria Solutions an invoice listing the new purchase-order number (SI041730) on August 27, 2020, contemporaneous with the shipment of Engage. Collier asserted Auria Solutions received the invoice—which contained Dow's terms and conditions—on August 27, 2020, before the Engage arrived at Auria Solutions. There is, however, no supporting documentation indicating Auria Solutions received the invoice.

On August 28, 2020, the day after Dow claims to have sent the invoice to Auria Solutions, Gonzales sent an email to Collier attaching the 2020 purchase order. The bottom of the email from Gonzales references Auria Solutions' terms and conditions:

> No employee or agent of Auria Solutions, including any subsidiaries or affiliated legal entities, is authorized into any legally binding agreement by email. Agreements with Auria Solutions are those expressly confirmed in writing as part of a definitive agreement signed by a duly authorized representative of Auria Solutions or purchase orders issued by Auria Solutions. In addition, please note that all Auria Solutions purchases are governed by the applicable Auria Solutions Purchase Order Terms and Conditions available at www.auriasolutions.com and that all unit or sales volume numbers provided to suppliers are estimates only and are not commitments by Auria Solutions. Be advised that Auria Solutions reserves the right to terminate any and all purchase orders for convenience pursuant to Auria Solutions Purchase Order Terms and Conditions.

The 2020 purchase order lists AU041730 as the purchase-order number, and indicates the purchase order date as July 3, 2020. It also indicates that it was for a "blanket order" ranging from July 3, 2020, to December 31, 2023. The 2020 purchase order also lists Auria Sidney under the "Ship To" and "Bill To" sections. But under the "Bill To" section, it also provides an option to email invoices to "USAP@auriasolutions.com." The "Notes" section of the 2020 purchase order states, in relevant part:

This Purchase Order, Purchase Order Amendment or Purchase Requisition incorporates by reference the Auria Solutions ("Auria") Purchase Order Terms and Conditions which are available through links provided on the Auria Website at www.auriasolutions.com[.] The Terms apply to all purchases by Auria and its affiliates under any Purchase Order, Purchase Order Amendment or Purchase Requisition.

* * *

Supplier agrees that it will sell to Auria and Auria agrees to buy all of Auria's requirements for products covered by this Purchase Order or Purchase Order Amendment from the Issue Date through xxxx/xx/xx at the prices indicated on this Purchase Order or Purchase Order Amendment in accordance with the firm quantities and delivery schedules specified in releases.

Collier indicated that Auria Solutions never informed Dow of the 2020 purchase order's termination date, and noted that neither party ever signed the agreement. Collier was unaware of any indication that Dow had agreed to the 2020 purchase order or that Auria Solutions had ever shared the terms and conditions with Dow. According to Collier, the 2020 purchase order had "no effect" on how the parties conducted business and they "continued to engage in the same pattern of exchanges" as always.

Starting in November 2020 and throughout 2021, Dow began to increase the price per pound that it charged for Engage. Dow indicated that market conditions required it to increase its prices for Engage. Auria Sidney disputed the price increases but continued to order, accept delivery, and pay for Engage. In a late February 2021 letter, Whitaker, who was previously involved in the 2019 negotiations with Dow, informed Dow that its "threat[] to stop shipment of [Engage]" was a breach of the purchase orders. Whitaker's letter stated that the purchase orders incorporated the Auria Solutions terms and conditions into the contract. He also expressed Auria Solutions' disagreement with Dow's contention that its order acknowledgements "in any way amend[] or replace[] the contract that has been formed between Auria and Dow pursuant to the Orders." Collier indicated that, "[o]ver an 18-month period before May 2021, Auria made 134 late payments to Dow." As a result, Collier, in late May 2021, "notified Auria that Auria's payment terms would be shortened from 50 days to a more standardized term of 45 days." Collier stated that, during this time period, "market conditions required Dow to increase the price of Engage for its customers, including Auria, on several occasions."

In early July 2021, Auria Sidney filed a demand for arbitration with the American Arbitration Association (AAA). The AAA arbitration-demand form listed the sole claimant as Auria Solutions, but a letter from defense counsel, and a written demand for arbitration (mirroring the format of a complaint), listed Auria Sidney as the sole claimant. The demand for arbitration alleged that the 2020 purchase order was a binding contract that required the parties to arbitrate their disputes related to Engage. Auria Sidney alleged two claims in the arbitration demand: (1) breaches of contract and the duty of good faith and fair dealing; and (2) seeking a declaration of the existence of a contract between the parties. Neither arbitration demand mentions the 2017 purchase order.

-4-

In early September 2021, Dow sued Auria Solutions in a one-count complaint seeking a declaration from the trial court on the issue of whether an agreement to arbitrate existed between the parties. Dow alleged that the 2020 purchase order did not govern the parties' relationship because every time Dow sent product to Auria Solutions, it sent an order acknowledgement form and invoices with its own terms and conditions that rejected any conflicting terms from Auria Solutions. The same day that it filed its complaint, Dow also moved for relief under Michigan's Uniform Arbitration Act (UAA), MCL 691.1681 *et seq.* Dow argued that the 2020 purchase order (1) did not satisfy Michigan's general statute of frauds or the statute of frauds in the Michigan Uniform Commercial Code (UCC), MCL 440.1101 *et seq.*; (2) did not implicate the UCC because Dow never accepted any of the purchase order's terms and was "an attempt to transform the parties' relationship"; and (3) conflicted with Dow's terms and conditions, so any proposed terms from Auria Solutions were "knocked out," including the arbitration provision.

Auria Solutions responded to the motion for judicial relief under the UAA, arguing that the Federal Arbitration Act (FAA) applied and preempted the UAA and, therefore, an arbitrator had to decide the question of whether the parties agreed to arbitrate. Auria Solutions also argued that, even if the trial court found that it should decide whether the parties had an agreement to arbitrate, it should enforce the arbitration agreement and dismiss Dow's complaint. It further argued that the 2017 purchase order was a contract between the parties, and that Dow's subsequent invoices with its own terms and conditions were irrelevant. Auria Solutions also noted that Dow presented no evidence that it sent the order acknowledgements, and, even if they were sent, they constituted an acceptance of Auria Solutions' terms and conditions. Auria Solutions also argued that its terms and conditions prevented those in Dow's order acknowledgement from becoming part of the contract because the 2020 purchase order expressly limited acceptance to the terms of that order. Additionally, Auria Solutions argued that Dow's proposed terms would have materially altered the terms of the 2020 purchase order and, therefore, could not become a part of the parties' agreement. Auria Solutions also answered the complaint, denying the majority of the allegations and explaining most of the denials by stating it was "not a party to the contract . . . ."

Following a hearing, the trial court granted Dow's motion for judicial relief under the UAA. The court stated: "This court, after reviewing the pleadings and hearing the arguments of counsel this morning, agrees with the plaintiff in this matter, so I—I will grant your request and the case will proceed before the court. Thank you." The trial court's mid-October 2021 order granting the motion stated it was granted "for the reasons stated on the record."

In mid-November 2021, Auria Solutions moved to amend its answer to state several counterclaims. The proposed counterclaims included (1) a declaration of the existence of a contract, (2) a request for the court to refer the case back to arbitration, and (3) a claim of breach of contract and breach of the duty of good faith and fair dealing. In the same filing, Auria Sidney moved to intervene, arguing it was the proper party to the contract with Dow, not Auria Solutions. Dow responded, arguing the proposed counterclaims were futile because the trial court's order granting Dow's motion for judicial relief determined that Auria Solutions' terms and conditions did not apply to the parties' relationship. Dow also argued the counterclaims were futile because they merely restated allegations already made. Regarding the motion to intervene, Dow argued it should be denied because Auria Sidney was not a party to a contract with Dow and, regardless, Auria Solutions adequately represented its subsidiary. The court denied the motion to amend and

to intervene without a hearing, explaining in the order only that the motion was denied "for lack of merit [i]n the grounds presented."

In mid-January 2022, Dow moved for entry of judgment and final order of dismissal. Dow argued that the trial court's October 2021 order "resolved all outstanding issues raised" by Dow in its complaint and motion for judicial relief and, as a result, there was "nothing left to be done in this case." Auria Solutions responded, urging the court to deny the motion because there was still a dispute regarding whether an agreement to arbitrate existed. According to Auria Solutions, the trial court had only determined that it was the proper body to evaluate whether such an agreement existed. Auria Solutions argued there were factual disputes related to the existence of such an agreement and, accordingly, Dow's motion should be denied. The trial court disagreed with Auria Solutions and entered an order granting Dow's motion. It explained that the motion was granted "based upon the Court having granted [Dow] all of the relief requested in its Complaint in the Order dated October 20, 2021 (i.e., that no agreement to arbitrate exists between the parties)." This appeal followed.

## II. STANDARDS OF REVIEW

"Whether a claim is subject to arbitration is . . . reviewed de novo, as is the construction of contractual language." *Tinsley v Yatooma*, 333 Mich App 257, 261; 964 NW2d 45 (2020) (citation omitted). This Court reviews a trial court's findings of facts for clear error. *Save Our Downtown v Traverse City*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 359536); slip op at 9. "A finding is clearly erroneous when, after reviewing the entire record, this Court is left with a definite and firm conviction that a mistake has been made." *Id*. (citation omitted).

Under MCL 691.1687(2), "[o]n motion of a person alleging that an arbitration proceeding has been initiated or threatened but that there is no agreement to arbitrate, the court shall proceed summarily to decide the issue." The trial court is, thus, essentially deciding whether to grant summary judgment, i.e., disposition, of a claim in such an instance. This particular request from Dow may, therefore, be viewed as a motion for summary disposition. Although the trial court did not indicate it was granting summary disposition under a specific rule, if the court considered evidence beyond the pleadings, we treat it as having been decided under MCR 2.116(C)(10). See *Jawad A Shah, MD, PC v State Farm Mut Auto Ins Co*, 324 Mich App 182, 207; 920 NW2d 148 (2018).

This Court reviews de novo a trial court's decision on a motion for summary disposition. *El-Khalil v Oakwood Healthcare Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). A motion under MCR 2.116(C)(10) "tests the factual sufficiency of a claim." *Id*. at 160 (citation and emphasis omitted). In considering a motion under MCR 2.116(C)(10), the trial court "must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *Id*. (citation omitted). Such a motion "may only be granted when there is no genuine issue of material fact." *Id*. (citation omitted). "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Id*. (quotation marks and citation omitted). "If there is a genuine issue of material fact as to whether there is such an agreement [to

arbitrate], that issue must be decided upon an evidentiary, albeit summary, hearing." *American Parts Co, Inc v American Arbitration Ass'n*, 8 Mich App 156, 174; 154 NW2d 5 (1967).[1]

"We review a trial court's decision on a motion to intervene for an abuse of discretion." *Yellow Tail Ventures, Inc v Berkley*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket Nos. 357654, 357666, and 358242); slip op at 10 (citation omitted). A trial court's decision to deny a motion for leave to amend pleadings is also reviewed for an abuse of discretion. *Jawad A Shah, MD, PC*, 324 Mich App at 208-209. An abuse of discretion occurs when the trial court chooses an outcome outside the range of principled outcomes. *Kuhlgert v Mich State Univ*, 328 Mich App 357, 377-378; 937 NW2d 716 (2019).

## III. THE COURT, NOT AN ARBITRATOR, MUST DECIDE THE VALIDITY OF AN ARBITRATION AGREEMENT

Auria Solutions first argues that the trial court erred when it concluded that it was for the court, not an arbitrator, to decide whether an enforceable arbitration agreement existed between Dow and Auria Solutions. We disagree.

"Arbitration is a matter of contract." *Altobelli v Hartmann*, 499 Mich 284, 295; 884 NW2d 537 (2016). "[A] valid agreement must exist for arbitration to be binding." *Ferndale v Florence Cement Co*, 269 Mich App 452, 460; 712 NW2d 522 (2006). "The court shall decide whether an agreement to arbitrate exists or a controversy is subject to an agreement to arbitrate." MCL 691.1686(2). In *Lichon v Morse*, 507 Mich 424, 437; 968 NW2d 461 (2021), our Supreme Court recognized that "[a] party cannot be required to arbitrate an issue which [it] has not agreed to submit to arbitration." (Alterations in original.) "The existence of an arbitration agreement and the enforceability of its terms are judicial questions for the court, not the arbitrators." *Fromm v Meemic Ins Co*, 264 Mich App 302, 305; 690 NW2d 528 (2004).

Auria Solutions asserts that the FAA preempts Michigan law and requires that an arbitrator decide whether the parties had an agreement to arbitrate. But under federal law, as under Michigan law, whether a party is bound by an arbitration clause generally "raises a question of arbitrability for a court to decide." *In re Auto Parts Antitrust Litigation*, 951 F3d 377, 381 (CA 6, 2020) (quotation marks and citation omitted).[2] Although parties can agree to have an arbitrator decide "gateway" questions of arbitrability, including whether they agreed to arbitrate, *Henry Schein, Inc v Archer & White Sales, Inc*, ___ US ___, ___; 139 S Ct 524, 529; 202 L Ed 2d 480 (2019) (quotation marks and citation omitted), courts "should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so," *In re Auto*

---

[1] Although *American Parts Co, Inc* is not strictly binding pursuant to MCR 7.215(J)(1) because it was issued before November 1, 1990, as a published opinion, it nevertheless "has precedential effect under the rule of stare decisis" pursuant to MCR 7.215(C)(2). See *Wells Fargo Rail Corp v Dep't of Treasury*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 359399); slip op at 10 n 2. This rule applies to other pre-November 1, 1990 cases referenced in this opinion.

[2] Although not binding on state courts, lower federal court decisions may be considered for their persuasive value. *Abela v Gen Motors Corp*, 469 Mich 603, 607; 677 NW2d 325 (2004).

*Parts Antitrust Litigation*, 951 F3d at 382 (quotation marks and citation omitted). Regardless, "courts should order arbitration of a dispute only where the court is satisfied that neither the formation of the parties' arbitration agreement *nor* (absent a valid provision specifically committing such disputes to an arbitrator) its enforceability or applicability to the dispute is in issue." *Id*. at 382-383 (quotation marks and citation omitted).

Under state and federal law, the threshold question of whether there exists an arbitration agreement between parties is for a court to decide. See MCL 691.1686(2); *Fromm*, 264 Mich App at 305; *Henry Schein, Inc*, ___ US at ___; 139 S Ct at 529; *In re Auto Parts Antitrust Litigation*, 951 F3d at 381-382. Auria Solutions notes that its arbitration language incorporates the AAA's commercial rules. This can constitute clear and unmistakable evidence to delegate arbitrability to an arbitrator. See *In re Auto Parts Antitrust Litigation*, 951 F3d at 382. But, here, the parties dispute whether there is an agreement to arbitrate, and in such a case, courts should avoid ordering arbitration. See *id*. at 382-383. The trial court, therefore, did not err in determining that it was the proper body to make this decision.

Although the trial court correctly concluded that the court, not the arbitrator, was responsible for addressing this threshold issue, neither the trial court's decision on the record at the October 20, 2021 hearing, nor its corresponding order actually explained that this was the court's finding. At the hearing, the court simply stated that it "agree[d] with the plaintiff in this matter" and granted Dow's motion. In its October 20, 2021 order, the court indicated that the motion was granted "for the reasons stated on the record." This Court may nevertheless affirm a trial court's decision when it reaches the right result, even if for the wrong (or unstated) reason. *Gleason v Dep't of Transp*, 256 Mich App 1, 3; 662 NW2d 822 (2003). Although the court did not adequately explain its basis for deciding that it was the proper body to determine the existence of an arbitration agreement, it nevertheless reached the right result. We, therefore, affirm that aspect of the trial court's decision. *Id*.

## IV. THE PARTIES DID NOT AGREE TO ARBITRATE

Auria Solutions also argues that, even if the trial court correctly determined that it was the proper body to address whether the parties had an enforceable arbitration agreement, the court prematurely entered judgment in Dow's favor because there were genuine issues of material fact regarding the existence of such an agreement. We disagree. Although the trial court did not make adequate findings, on the record before us, we are able to conclude that there were no genuine factual disputes regarding the existence of an agreement to arbitrate. There was no agreement.

"[W]hen interpreting an arbitration agreement, we apply the same legal principles that govern contract interpretation." *Altobelli*, 499 Mich at 295 (citation omitted). "Our primary task is to ascertain the intent of the parties at the time they entered into the agreement, which we determine by examining the language of the agreement according to its plain and ordinary meaning." *Id*.

> The general policy of this State is favorable to arbitration. The burden is on the party seeking to avoid the agreement, not the party seeking to enforce the agreement. In deciding the threshold question of whether a dispute is arbitrable, a reviewing court must avoid analyzing the substantive merits of the dispute. If the

dispute is arbitrable, the merits of the dispute are for the arbitrator. [*Id*. at 295-296 (quotation marks and citations omitted).]

In general, Michigan's UCC applies to the sale of goods. See MCL 440.2102. The UCC "is to be liberally construed and applied to promote its underlying purposes and policies." *Power Press Sales Co v MSI Battle Creek Stamping*, 238 Mich App 173, 180; 604 NW2d 772 (1999) (quotation marks and citation omitted). Absent a directly-controlling provision of the UCC, questions are resolved with reference to general legal principles, i.e., the law of contract interpretation. *Conagra, Inc v Farmers State Bank*, 237 Mich App 109, 131-132; 602 NW2d 390 (1999); MCL 440.1103.

Under the UCC, "[a] contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." MCL 440.2204(1). "An agreement sufficient to constitute a contract for sale may be found even though the moment of its making is undetermined." MCL 440.2204(2). One of the main issues here is what constituted the offer and acceptance of the contract terms. In that regard, MCL 440.2206(1) provides:

> (1) Unless otherwise unambiguously indicated by the language or circumstances
>
> (a) an offer to make a contract shall be construed as inviting acceptance in any manner and by any medium reasonable in the circumstances;
>
> (b) an order or other offer to buy goods for prompt or current shipment shall be construed as inviting acceptance either by a prompt promise to ship or by the prompt or current shipment of conforming or nonconforming goods, but such a shipment of nonconforming goods does not constitute an acceptance if the seller seasonably notifies the buyer that the shipment is offered only as an accommodation to the buyer.

"An offer is defined as the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to the bargain is invited and will conclude it." *Kloian v Domino's Pizza, LLC*, 273 Mich App 449, 453; 733 NW2d 766 (2006) (quotation marks and citation omitted). "[A]n acceptance sufficient to create a contract arises where the individual to whom an offer is extended manifests an intent to be bound by the offer, and all legal consequences flowing from the offer, through voluntarily undertaking some unequivocal act sufficient for that purpose." *Id*. at 453-454 (quotation marks and citation omitted). In determining which document is an offer and which is an acceptance, "[c]ourts must often look beyond the words employed in favor of a test which examines the totality of the circumstances." *Challenge Machinery Co v Mattison Machine Works*, 138 Mich App 15, 21; 359 NW2d 232 (1984).

Here, the critical issue is the significance of the additional or different terms that the parties added or disputed in the relevant purchase orders, order acknowledgements, and invoices. MCL 440.2207, which addresses such terms, provides:

> (1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even

though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

   (2) The additional terms are to be construed as proposals for addition to the contract.  Between merchants such terms become part of the contract unless:

   (a) the offer expressly limits acceptance to the terms of the offer;

   (b) they materially alter it; or

   (c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

   (3) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract.  In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this act.

"[A] party who has entered into an agreement cannot," however, change those portions of an already-agreed-upon contract "by the simple expedient of sending a written 'confirmation' containing additional or different terms . . . ." *American Parts Co, Inc*, 8 Mich App at 174.  "[A] party, except a merchant in the case of an immaterial term, may ignore additional terms, and proceed with performance of the agreement actually negotiated by the parties without fear that such performance will be interpreted by court or jury as acceptance of the other party's additional terms." *Id*. at 173.

   The fact that . . . one or both of the parties resorts to what some call the battle of forms, does not, under section 2207, change the agreement or prevent the formation of the contract, or place one party or another in the position of waiving the benefit of the agreement or becoming bound to unagreed small or large print by proceeding with performance of those terms upon which the parties, in fact, did orally agree. [*Id*.]

   Despite its laconic order,[3] the trial court correctly concluded that that there was no agreement to arbitrate between Dow and Auria Solutions.  This Court can affirm the trial court

---

[3] The trial court's orders in this case are inadequate.  The October 20, 2021 order was supported only by the trial court's statement on the record that it simply agreed with Dow and was granting the motion.  The January 19, 2022 order fares no better, and merely stated that it granted Dow's motion for entry of judgment because the court had earlier granted "all of the relief requested in its Complaint in the Order dated October 20, 2021 (i.e., that no agreement to arbitrate exists between the parties)."  This statement in the January 19, 2022 order, that the October 20, 2021 order found "no agreement to arbitrate exists between the parties," is unsupported by the record.

when it reaches the correct result, albeit for the wrong (or unstated) reason. *Gleason*, 256 Mich App at 3. The so-called knock-out rule, MCL 440.2207(3), applies in Dow's favor. Although the parties dispute which terms and documents control, there is no genuine factual dispute about whether the parties agreed to arbitrate. They did not.

Here, for an arbitration agreement to exist, it would have to stem from either the 2017 purchase order or the 2020 purchase order. Auria Solutions asserts that the terms and conditions in its 2017 and 2020 purchase orders control, that it never received the order acknowledgements from Dow containing its terms and conditions (and suggests that Dow never actually sent them), and that Dow performed under the purchase orders before sending the invoices. Auria Solutions supports many of these assertions with the affidavit of Gonzales. Auria Solutions also questioned whether the order acknowledgement conditioned Dow's acceptance on Auria Solutions' agreement to Dow's terms, and asserted that Dow's proposed terms materially altered Auria Solutions' terms. Dow, on the other hand, asserted that it never agreed to the 2020 purchase order, that it sent the order acknowledgements to Auria Solutions, and that, regardless, it sent an invoice containing the terms and conditions, and rejecting any conflicting terms, to Auria Solutions. Dow supported many of these assertions with an affidavit from Collier.

Regarding the 2020 purchase order, there is no genuine factual dispute: its terms did not create an agreement to arbitrate between Auria Solutions and Dow for two reasons. First, applying the so-called "knock-out" rule to the uncontested material facts indicates that there was no agreement to arbitrate. There is no dispute that the parties negotiated but failed to reach a long-term supply agreement in 2019. In early July 2020, Auria Sidney generated but did not send the 2020 purchase order. Instead it continued to provide Dow with weekly forecasts, and Dow supplied product. The arbitration clause did not appear until late August 2020, when Gonzales sent an email attaching the 2020 purchase order and referencing Auria Solutions' terms and conditions at the bottom of the email. The arbitration clause was a material alteration to their agreement for the sale Engage at an agreed upon quantity and price. See MCL 440.2207(2)(b). It was also a term that Dow had previously rejected in prior invoices and confirmations. See MCL 440.2207(2)(c). The knock-out rule applies leaving the agreement to purchase in place, but not the proposal to add an arbitration agreement. Second, even if it survived the knock-out rule, the uncontroverted facts indicate that the agreement did not satisfy the statute of frauds. The 2020 purchase agreement was an unsigned agreement that contemplated multi-year obligations with no end-date. This violated the statute of frauds. See MCL 440.2201(1) (UCC statute of frauds requiring signature by the party against whom enforcement is sought). See also MCL 566.132(1)(a) (providing that an agreement that is not to be performed within one year from the making of the agreement is void if not in writing and signed with an authorized signature).

Alternatively, Auria Solutions relies on the 2017 purchase order, which fares no better. First, there is no competent evidence that the 2017 purchase order contained an arbitration clause. Auria Solutions claims the 2017 purchase order incorporated IAC's terms and conditions by reference, including an arbitration clause, but the only terms and conditions that Auria Solutions

There is no indication in either order, or in the transcript of the October 20, 2021 hearing, of how the trial court reached its conclusion that there was no agreement to arbitrate between the parties.

provided to Dow or the trial court was a version dated approximately one month after the date listed on the 2017 purchase order. The only evidence of an arbitration agreement in the terms and conditions on the date listed on the 2017 purchase order is the Gonzales affidavit, but Gonzales provided no foundation for his knowledge and did not work for Auria until 2019. Second, to the extent the arbitration agreement in the 2017 purchase order was valid at all, it was not an agreement between Dow and Auria Solutions; rather, it was an agreement between Dow and IAC, which Auria Solutions acknowledges was a different company. Third, evidence of Dow's terms and conditions in its order acknowledgements and invoices indicated that it unequivocally rejected the arbitration clause.

In sum, neither the 2017 purchase order, nor the 2020 purchase order, created an agreement to arbitrate between Dow and Auria Solutions. Although the trial court did not clearly state its findings, it correctly concluded that no arbitration agreement existed.

## V. COUNTERCLAIMS AND INTERVENTION

Auria Solutions next argues that the trial court abused its discretion when it denied its motion for leave to amend its answer to add counterclaims. We agree.

Trial courts have discretion to grant or deny a motion for leave to amend, but generally should only deny leave for specific reasons, such as undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by previously-allowed amendments, undue prejudice to the nonmoving party, and futility. *Weymers v Khera*, 454 Mich 639, 658; 563 NW2d 647 (1997) (citation omitted). An amendment is not warranted if it would be futile. *Id.* at 658. "An amendment would be futile if it is legally insufficient on its face, and the addition of allegations that merely restate those allegations already made is futile." *Wormsbacher v Seaver Title Co*, 284 Mich App 1, 8-9; 772 NW2d 827 (2009). See also *Dowerk v Charter Twp of Oxford*, 233 Mich App 62, 75; 592 NW2d 724 (1998) ("An amendment is futile where the paragraphs or counts the plaintiff seeks to add merely restate, or slightly elaborate on, allegations already pleaded."). "The trial court must specify its reason for denying the motion; failure to do so requires reversal unless the amendment would be futile." *Dowerk*, 233 Mich App at 75.

The trial court abused its discretion when it denied the motion for leave to amend to add counterclaims. The court provided no explanation for its denial of the motion, other than stating there was a "lack of merit [i]n the grounds presented." This was insufficient. See *Dowerk*, 233 Mich App at 75. The trial court's explanation provides nothing for this Court to review in terms of why leave to amend was denied—whether that be for undue delay, bad faith or dilatory motive, undue prejudice to Dow, or futility. See *Weymers*, 454 Mich at 658. Accordingly, the trial court abused its discretion in denying leave to amend without adequately explaining the basis for its denial.

Dow argues that the amendment would have been futile and, thus, reversal for the trial court's failure to adequately explain its denial is not required. We disagree. Dow contends that "each of [Auria Solutions'] proposed claims rises and falls with the terms of the [2020 purchase order] in conflict with those in Dow's [terms and conditions]" and the "conflicting terms are not part of the parties' agreement." Dow asserts that this "is what the [t]rial [c]ourt determined in its October 20[, 2021] order, which 'granted' Dow's motion seeking a declaration that no agreement

-12-

to arbitrate exists." As discussed earlier, however, the trial court did not make adequate findings related to the parties' agreement. This inadequacy necessarily requires the trial court to re-address—with explanation—whether leave to amend is warranted.

Finally, Auria Solutions argues that the trial court abused its discretion when it denied Auria Sidney's motion to intervene without a hearing and by explaining only that it lacked merit. We agree.

Intervention is governed by MCR 2.209. MCR 2.209(A), which governs intervention of right, provides:

Intervention of Right. On timely application a person has a right to intervene in an action:

(1) when a Michigan statute or court rule confers an unconditional right to intervene;

(2) by stipulation of all the parties; or

(3) when the applicant claims an interest relating to the property or transaction which is the subject of the action and is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

MCR 2.209(B), on the other hand, governs permissive intervention and provides:

Permissive Intervention. On timely application a person may intervene in an action

(1) when a Michigan statute or court rule confers a conditional right to intervene; or

(2) when an applicant's claim or defense and the main action have a question of law or fact in common.

In exercising its discretion, the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

An overly-technical reading of MCR 2.209 is not appropriate. See *SCD Chem Distrib, Inc v Maintenance Research Laboratory, Inc*, 191 Mich App 43, 45; 477 NW2d 434 (1991), citing *SNB Bank & Trust v Kensey*, 145 Mich App 765, 772; 378 NW2d 594 (1985). The burden of demonstrating inadequate representation is "minimal," *Karrip v Cannon Twp*, 115 Mich App 726, 731-732; 321 NW2d 690 (1982), and "need not definitely be established," *Vestevich v West Bloomfield Twp*, 245 Mich App 759, 761-762; 651 NW2d 646 (2001). Instead, "the *concern* of inadequate representation of interests need only exist[.]" *Id*. at 762 (emphasis added).

Dow contends on appeal that Auria Sidney is not a party to any contract with Dow, noting various documents listing Auria Solutions as the relevant party. These include the 2020 purchase order, which was issued by Auria Solutions; the arbitration demand, which listed Auria Solutions as the claimant; Dow's invoices, which identified Auria Solutions as the ordering party; Dow's order acknowledgement, which identified Auria Solutions as the buyer; and letters from Auria's attorney identified Auria Solutions as the aggrieved party, not Auria Sidney. Dow's assertions on these points are somewhat misleading.

First, although the order acknowledgement and invoice list Auria Solutions as the buyer of the Engage, the address provided for Auria Solutions on those documents is 2000 Schlater Drive, Sidney, Ohio 45365-8094. This is the same address listed for Auria Sidney in the 2020 purchase order, and the same address listed in the 2017 purchase order for IAC Sidney, LLC. The 2017 purchase order indicates that IAC Sidney was to be billed for the order and, as the parties have acknowledged, IAC Sidney eventually became Auria Sidney. Moreover, the forecasts sent to Dow with order number SI041730 listed Auria Sidney as the "Ship To" entity, and listed 2000 Schlater Drive as the shipping address. Second, it is true that the AAA arbitration demand form lists Auria Solutions as the claimant. But the written arbitration demand, which is formatted similar to a complaint, references Auria Sidney as the sole claimant. Third, although the letters Dow references indicate that Bodman PLC represented Auria Solutions, the letters also indicate that Bodman represented Auria Solutions' affiliates. This includes Auria Sidney. These discrepancies demonstrate that there is a dispute regarding the proper party to this contract, and raise a question of whether Auria Solutions could adequately represent Auria Sidney's interests. The trial court did not address any of these discrepancies, nor explain the reason that it denied Auria Sidney's request to intervene, other than saying the motion lacked merit. This, too, was inadequate. We, therefore, remand for the trial court to more fully address this issue.

## VI. CONCLUSION

We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion. On remand, the trial court must re-evaluate the requests for leave to amend and intervention. In considering these issues, the trial court must provide explanations sufficient to facilitate any further appellate review. We do not retain jurisdiction.

/s/ Sima G. Patel
/s/ Brock A. Swartzle
/s/ Noah P. Hood

-14-